31 P.3d 665 (2001)
Hu Hyun KIM, Petitioner.
v.
Stanley LEE and Jane Doe Lee, Defendants,
Yakima County Title Company d/b/a Yakima Title & Escrow, Respondent.
No. 70347-7.
Supreme Court of Washington, En Banc.
Argued May 22, 2001.
Decided September 20, 2001.
*666 Edwards, Sieh, Smith & Goodfriend, Howard Mark Goodfriend, Seattle, Chae & Associates, Nancy McKenney Allo, Kent, for Petitioner.
Michael Frederick Shinn, Yakima, for Respondent.
IRELAND, J.
This is a discretionary review of a Court of Appeals' decision which granted Yakima Title & Escrow Company first lienholder position, through the doctrine of equitable subrogation, over a prior perfected judgment creditor. We hold under the facts of this case that the title insurer should not avoid liability through the doctrine of equitable subrogation because the title insurer had actual knowledge of a prior judgment lien and failed to *667 disclose such a lien to its insured before issuance of the title policy. The Court of Appeals' decision is reversed, and the trial court's judgment is reinstated.

FACTS
Background
The pertinent facts in this case are not in dispute. On December 5, 1995, Kenneth and Yun Ok Chang bought a home in Yakima for their daughter and son-in-law, Sharon and Stanley Lee. Of the $165,000 purchase price, $130,000 was financed by a promissory note from Sterling Trust Company (Sterling) in the Changs' name at an interest rate of 10.5 percent per annum, maturing in six years. The promissory note was secured by a deed of trust dated December 5, 1995, and was recorded on December 11, 1995 in Yakima County Auditor's file number 3118149. Yakima Title & Escrow (Yakima Title) recorded the statutory warranty deed in favor of the Changs and the deed of trust was executed at the direction of Sterling Escrow Company. The Lees moved into the home and made payments owed by the Changs on the Sterling loan as each became due.
Meanwhile, on April 28, 1997, Hu Hyun Kim obtained a default judgment against the Lees in King County Superior Court for failure to comply with discovery orders. Judgment was entered for a total of $83,565.37. The judgment was recorded in Yakima County on May 16, 1997, under auditor's file number 7010775.
On December 22, 1997, two years after purchasing the home, the Changs quitclaimed an undivided one-half interest in the property to the Lees. The Changs and the Lees filed an excise tax affidavit claiming the one-half interest as a gift to claim the gift exemption. The home was still subject to the loan from Sterling's deed of trust. Subsequently, the Lees sought their own financing in order to take advantage of lower interest rates.
In March 1998, the Lees procured financing through Pioneer National Bank (Pioneer Bank) to pay off the underlying deed of trust granted by the Changs to Sterling. As part of the deal, the Changs agreed to quitclaim their remaining undivided one-half interest to the Lees in consideration of love and affection. The quitclaim deed was signed on April 10, 1998 and recorded on April 28, 1998. Yakima Title's employee, Rae Dawn Hawley, signed a real estate tax affidavit in which the Changs and Lees were not subject to pay excise tax by claiming that "grantor gifts property which has no underlying debt." Clerk's Papers (CP) at 156.
On April 20, 1998, the Lees executed their own promissory note and deed of trust to Pioneer Bank with an interest rate of 6.75 percent per annum, maturing in 30 years. All of the Lees' loan proceeds were used to pay off Sterling's deed of trust, plus settlement charges.
On April 28, 1998, a year after Kim had recorded the King County judgment in Yakima County, Pioneer Bank recorded its deed of trust and the second quitclaim deed.
Yakima Title issued a commitment for title insurance insuring Pioneer Bank's first lien position effective March 16, 1998, and updated it on April 22, 1998. In conducting its title search, Yakima Title failed to discover Kim's judgment lien. Thus, the commitment for title insurance did not mention Kim's judgment against the Lees.
On June 17, 1998, an assignment of Pioneer Bank's deed of trust to Countrywide Home Loans, Inc. was recorded by Yakima Title.
Once Kim learned of the new loan by Pioneer Bank, Kim's counsel informed Yakima Title of Kim's judgment, its date and recording number, and that Kim's judgment was now the first lien on the Yakima property, on July 13, 1998. Yakima Title's agent responded that he had not found an abstract with the Yakima Superior Court Clerk's Office and believed that Kim could not have held a perfected judgment lien. Later the same day, Kim's counsel confirmed the telephone conversation with Yakima Title and sent copies to Pioneer Bank and Kim.
On July 16, 1998, an assignment of deed of trust was amended to show PHH Mortgage Services Corporation (PHH) as an assignee; it was re-recorded by Yakima Title.
*668 On July 17, 1998, Yakima Title issued an ATLA title policy with PHH as the insured, showing the Lees as owners of the property and Pioneer's deed of trust in first position, with no mention of Kim's judgment.
On December 10, 1998, Kim's counsel notified PHH's counsel of Kim's judgment lien, of which they had been unaware.
On June 21, 1999, Kim's counsel notified Yakima Title that Kim would begin execution on the judgment.[1] PHH had previously notified Yakima Title, on May 10, 1999, that Kim would execute on his judgment lien as soon as possible. Yakima Title, as the agent for the policy issuer, accepted this notice as a tender of defense of PHH's lien position.[2]
On September 9, 1999, a writ of execution was issued by King County Superior Court.
Procedural History
King County Superior Court
At Kim's request, King County Superior Court issued a writ of execution on the Lees' real property in Yakima. Yakima Title moved to intervene and to quash the execution sale. Kim opposed these motions and filed a motion for CR 11 sanctions against Yakima Title. On October 21, 1999, the trial court granted Yakima Title's motion to intervene, denied Kim's motion for CR 11 sanctions, and denied Yakima Title's motion to quash. Yakima Title appealed the denial of the motion to quash.
Court of Appeals, Division One
The Court of Appeals' decision reversed the King County Superior Court's order denying Yakima Title's motion to establish as a first lien on defendant Lee's real property, prior to the previously filed judgment against Lee and in favor of Kim, a deed of trust given by Lee to Yakima Title's assignee PHH.
Kim now seeks this Court's review.

ANALYSIS
Standard of Review
Determination of a proper standard of review of whether equitable subrogation should be applied to give a mortgage lender first lien position over a prior perfected judgment creditor rests upon whether the question presented for review is one of fact, one of law, or a mixed question of law and fact. Rasmussen v. Employment Security Dep't, 98 Wash.2d 846, 850, 658 P.2d 1240 (1983). Since the pertinent facts of this case are not in dispute, the lien priority of PHH over a prior perfected lien creditor is a question of law, which is subject to de novo review. Millay v. Cam, 135 Wash.2d 193, 198, 955 P.2d 791 (1998) (citing Medcalf v. Dep't of Licensing, 133 Wash.2d 290, 297, 944 P.2d 1014 (1997)).
Recording Statute
Under Washington's recording act, RCW 65.08.070, a subsequent mortgagee takes subject to any prior encumbrances of which the mortgagee has either actual or constructive knowledge:
The purpose of the recording statute is to make the deed first recorded superior to any outstanding unrecorded conveyance of the same property unless the mortgagee or purchaser had actual knowledge of the transfer not filed of record.
Tacoma Hotel v. Morrison & Co., 193 Wash. 134, 140, 74 P.2d 1003 (1938).
Judgment attaches automatically as a lien upon the real estate of the judgment debtor. RCW 4.56.190. A superior court judgment becomes a perfected lien against the judgment *669 debtor's real property from the time the judgment creditor records the judgment with the recording officer of the county where the property is located. RCW 6.13.090. See In re Deal, 85 Wash.App. 580, 583, 933 P.2d 1084 (1997). Moreover, under the amendments to the law enacted by the 1999 Legislature, a judgment creditor is entitled to execute on the judgment debtor's equity in real estate, net of the homestead amount, less all liens and encumbrances senior to the creditor's judgment. RCW 6.13.010(3); Laws of 1999, ch. 403, § 1.
In the instant case, when Kim's judgment was filed in Yakima County on May 16, 1997, it became a lien on the Lees' one-half interest in the Yakima property on December 22, 1997, the date the Lees acquired their one-half interest from the Changs. The Kim judgment lien attached to the entire Yakima property when the Changs conveyed their remaining one-half interest to the Lees by quitclaim deed on April 10, 1998. Kim's judgment was perfected for almost a year before the Lees placed the Pioneer Bank deed of trust on the Yakima property. Once the Sterling deed of trust was paid, there were no liens on the Yakima property senior to Kim's judgment when the King County Superior Court issued its writ of execution in September 1999.
Refinance
Generally, when the doctrine of equitable subrogation applies, its effect is to restore the first lien position of the mortgage refinance lender. Grant S. Nelson & Dale A. Whitman, Real Estate Finance Law § 10.6 (3 ed.1993). In order for the doctrine of equitable subrogation to apply, the loan must be considered a refinance.
Black's Law Dictionary defines "refinance" as follows:
To finance again or anew; to pay off existing debts with funds secured from new debt; to extend the maturity date and/or increase the amount of an existing debt; to arrange for a new payment schedule. The discharge of an obligation with funds acquired through the creation of a new debt, often at a different interest rate.
Black's Law Dictionary 1281 (6th ed.1990).
Webster's Third New International Dictionary defines "refinance" as "to renew or reorganize the financing of: provide capital for afresh: provide for (an outstanding indebtedness) by making another loan or a larger loan on fresh terms." Webster's Third New International Dictionary 1908 (1986).
In the present case, the Lees paid off the Changs' existing debt with funds secured from new debt incurred by the Lees. Although the borrowers are different parties, since they are family and the transfer of title from the Changs to the Lees was a gift, that fact should not preclude treatment of the new deed of trust as a refinance. The terms of the loan significantly changed, even though it was for the same collateral and the amount of the indebtedness did not change significantly. For instance, the interest rate was reduced from 10.5 percent to 6.75 percent and the maturity date was extended from 6 years to 30 years. These loan terms from Pioneer Bank were substantively different from the Changs' loan. The lower interest rate is of no prejudice to the judgment lienholder. However, the increase in term from 6 to 30 years is prejudicial should the judgment lien be subrogated to the new deed of trust.
Doctrine of Equitable Subrogation
"[S]ubrogation is a consequence which equity attaches to certain conditions. It is not an absolute right, but one which depends upon the equities and attending facts and circumstances of each case." Coy v. Raabe, 69 Wash.2d 346, 351, 418 P.2d 728 (1966). As the Court of Appeals noted, Washington has not yet adopted the doctrine of equitable subrogation; this is a matter of first impression in Washington. Kim v. Lee, 102 Wash.App. 586, 592, 9 P.3d 245 (2000).
Subrogation is fundamentally an equitable concept designed "to impose ultimate responsibility for a wrong or loss on the party who, in equity and good conscience, ought to bear it." Mahler v. Szucs, 135 Wash.2d 398, 411, 957 P.2d 632 (1998) (subrogation *670 in auto insurance context allows insurer to recover payments made to insured from third party tortfeasor). The doctrine of subrogation is not a fixed and inflexible rule of law or of equity. Han v. United States, 944 F.2d 526, 529 (9th Cir.1991). Generally, in federal courts, equity has acted only when legal remedies were inadequate. Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 508, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959).
"Subrogation is always liberally allowed in the interests of justice and equity." J.D. O'Malley & Co. v. Lewis, 176 Wash. 194, 201, 28 P.2d 283 (1934) (agent paying on behalf of bonding company entitled to subrogation from third party obligated to reimburse the principal). However, in the real estate context, equitable subrogation has been traditionally invoked only to prevent unjust enrichment; equitable remedies are not granted where it would produce injustice. Restatement (Third) of Prop.: Mortgages § 7.6 cmt. f at 522 (1997).
We adopt the principle of subrogation in the mortgage loan context as set forth in the Restatement (Third) of Prop.: Mortgages § 7.3, as follows:
(a) If a senior mortgage is released of record and, as part of the same transaction, is replaced with a new mortgage, the latter mortgage retains the same priority as its predecessor, except
(1) to the extent that any change in the terms of the mortgage or the obligation it secures is materially prejudicial to the holder of a junior interest in the real estate, or
(2) to the extent that one who is protected by the recording act acquires an interest in the real estate at a time that the senior mortgage is not of record.
(b) If a senior mortgage or the obligation it secures is modified by the parties, the mortgage as modified retains priority as against junior interests in the real estate, except to the extent that the modification is materially prejudicial to the holders of such interests and is not within the scope of a reservation of right to modify as provided in Subsection (c).
Under the principles of replacement and modifications of mortgages in section 7.3, "[t]he result is analogous to subrogation, and under this Restatement the requirements are essentially similar to those for subrogation." Restatement (Third) of Prop.: Mortgages § 7.6 cmt. e at 519.
Under the Restatement, a modification of a mortgage will ordinarily cause it to lose priority to junior interests to the extent that the modification is materially prejudicial to those interests. Id. § 7.3. Not all modifications will materially prejudice junior interests. For example, mortgagees commonly consent to an extension of the mortgage maturity date or to a rescheduling or "stretching out" of installment payments. Id. § 7.3 cmt. c. Absent an increase in the principal amount or the interest rate of the mortgage, such modifications normally do not jeopardize the mortgagee's priority as against intervening interests. Id.
In the present case, the modifications made to the loan from the Changs to the Lees were not merely an extension of the maturity date or stretching out installment payments of the existing mortgage; rather, it was a new mortgage and the change was from a 6-year maturity date to a 30-year maturity date. These modifications were materially prejudicial to Kim.
Existing mortgages replaced by new mortgages do not always fall within the rules of replacement and modification of senior mortgages. However, in this case, because the intent of the Kims and the Lees was for the Lees to obtain the home, the rules of replacement and modification should apply.
Actual notice of an intervening judgment lien often bars subrogation. See generally Dodge City of Spartanburg, Inc. v. Jones, 317 S.C. 491, 454 S.E.2d 918, 920-21 (1995). When Kim's counsel contacted Yakima Title on July 17, 1998, it received actual notice of Kim's judgment lien before the title policy was issued. In spite of this knowledge, Yakima Title chose not to disclose Kim's judgment lien to the insured. Yakima Title concedes it missed the recorded judgment. Yakima Title recorded an assignment of the Pioneer Bank deed of trust to PHH and issued its title insurance policy to PHH.
*671 The Restatement (Third) of Prop.: Mortgages has adopted the view that, "subrogation can be granted even if the payor had actual knowledge of the intervening interest; the payor's notice, actual or constructive, is not necessarily relevant." Restatement (Third) of Prop.: Mortgages § 7.6 cmt. e at 520 (emphasis added). However, allowing subrogation in the face of actual knowledge would discount the purpose of the recording statute, RCW 65.08.070. The purpose of the recording statute is to make the deed first recorded superior to any outstanding unrecorded conveyance of the same property unless the mortgagee or purchaser had actual knowledge of the transfer not filed of record. Tacoma Hotel, 193 Wash. at 140, 74 P.2d 1003. Further, allowing subrogation in this case would ignore the interests of equity and justice established by Washington jurisprudence. Mahler, 135 Wash.2d at 412, 957 P.2d 632. Equitable remedies should not be granted where it would result in injustice. Id.
In the Coy case, the title company failed to ascertain the existence of a lease and option to purchase regarding property purchased at a tax sale. This Court held that the purchasers, their lender, and their insuring title company were all placed on constructive notice of the plaintiff's interest in the property. Coy, 69 Wash.2d at 349, 418 P.2d 728.[3] The purchaser and title insurer nonetheless claimed to be subrogated to the federal government's tax claims, which they had paid. This Court determined that the purchasers could claim a subrogation interest, but the title company could not, since the purchasers were "bona fide purchasers to the extent that they were entitled to rely upon others who were paid to give an expert opinion and insure title," while the title company was "engaged in giving those expert opinions for a consideration." Id. at 350, 418 P.2d 728. This Court ultimately held that it was "not the province of the court to relieve a title insurance company of its contractual obligation," to insure title. Id. at 351, 418 P.2d 728.
The role of the title insurer is to insure title; "either they insure or they don't." Coy, 69 Wash.2d at 351, 418 P.2d 728. Generally, the role of the title insurer is relied upon by the lender, judgment creditor, and other lienors. Just as a lender relies on the title insurer to commit that title is vested in its borrower, subject only to known exclusions, judgment creditors and other lienors rely on title insurers to prevent a debtor from conveying real property without first satisfying a perfected lien.
In the instant case, legal remedies and equity suggest that the loss should fall on the title company rather than the innocent judgment creditor. As in Coy, this case was precipitated by the title company's negligence and failure to acknowledge the lien. Yakima Title not only failed to discover Kim's judgment lien when it conducted its title search for the Lees' loan from Pioneer, as in the Coy case, but also failed to acknowledge the lien when it had actual knowledge of it from Kim's counsel. With the information at hand, Yakima Title still issued the title policy insuring PHH's first lien position. Applying equitable subrogation to extend in favor of Yakima Title would result in alleviating Yakima Title of its own negligence and complete disregard of the actual notice at the expense of an innocent judgment creditor.

CONCLUSION
Under Washington's recording act, from the time the judgment creditor records the judgment with the recording officer of the county where the property is located, the judgment attaches automatically. RCW 4.56.190; RCW 6.13.090. Since Kim's judgment was perfected and attached almost a year before the Lees placed the Pioneer Bank deed of trust, the senior judgment lien under the statute was Kim's judgment lien.
This financing arrangement falls under the definition of a refinance. Although the doctrine of equitable subrogation may be applied, this case is controlled by Coy v. Raabe, 69 Wash.2d 346, 418 P.2d 728 (1966), which allows equitable subrogation to a bona fide purchaser [or refinance lender] to the extent they were entitled to rely on others to *672 guarantee title. However, equitable subrogation should not apply in favor of a title company which guaranteed title while on constructive or actual notice of a prior judgment.
Under a contractual obligation, Yakima Title was negligent in giving its expert opinion and insuring title. The doctrine of subrogation does not apply to relieve a title insurance company of its contractual obligation because a title insurance company not only receives consideration for rendering an expert opinion, but also for acting as an insurer of its accuracy. Coy, 69 Wash.2d at 351, 418 P.2d 728. Yakima Title failed to discover a recorded and perfected judgment lien and upon receiving actual notice, failed to disclose or remedy the situation.
The title insurer should not be able to invoke the doctrine of equitable subrogation to be relieved from a contractual obligation when the title insurer had constructive and actual notice of a prior judgment and when the new obligation prejudices lienholders who would be junior by subrogation. The case is reversed, and the trial court's judgment is reinstated.[4]
SMITH, JOHNSON, BRIDGE, and OWENS, JJ., concur.
CHAMBERS, J. (concurring).
I concur with the majority in result only. The doctrine of equitable subrogation does not apply to the Chang/Sterling Escrow Company and Lee/Pioneer National Bank transaction. The transaction involved different mortgagors and different mortgagees; it cannot be described as a simple refinance and does not satisfy the requirements of Restatement (Third) of Prop.: Mortgages § 7.3 (1997). In addition, the extension of the mortgage maturity date may or may not prejudice a judgment creditor. I too would reverse and reinstate the trial court's judgment.
ALEXANDER, C.J., concurs.
SANDERS, J. (dissenting).
Accepting the doctrine of equitable subrogation as set forth in the Restatement (Third) of Prop.: Mortgages § 7.3 (1997), the majority nevertheless denies its benefits to the PHH Mortgage Services Corporation (PHH). Its analysis begins on an incoherent note:
This is a discretionary review of a Court of Appeals' decision which extended to Yakima Title & Escrow Company the first lienholder position of its insured,....
Majority at 666.
No, Yakima Title is an insurance company which intervened in this action to defend the asserted legal right of its insured, PHH, to first lien priority over judgment creditor Hu Hyun Kim. Yakima Title does not now, nor has it ever, held a lien on the property, first or otherwise. Rather under the terms and conditions of its policy Yakima Title owed PHH a defense, and this action evidences the fact that it is providing one. If Yakima Title prevails, judgment creditor Kim would be equitably subrogated to PHH's first lien position. If, on the other hand, the equitable subrogation claim fails, PHH may have a valid claim against its insurer, Yakima Title, because it insured against all claims on the title not exceptedand Kim's judgment was not. But that is their problem, not ours. Our problem is to decide whether Kim's judgment (subsequent to the original deed of trust but prior to its replacement) should take precedence over PHH's subsequently recorded deed of trust. Since the original deed of trust was recorded before the judgment lien, it is argued the replacement deed of trust should relate back to the date the original deed of trust was recorded for the purpose of establishing its priority.
In any case, however, the fact that PHH had title insurance is no more relevant to this case than the availability of automobile insurance in the typical personal injury case. And whether Yakima Title negligently failed to except a previously filed judgment from coverage is also quite beside the point; it is the *673 consequence of that prior filing which is here at issue.
The general rule is aptly expressed in Washington's recording act, RCW 65.08.070, that first in time is first in right. 18 William B. Stoebuck, Washington Practice, Real Estate: Transactions § 17.21, at 311 (1995). That is to say that the first instrument recorded (or judgment filed) takes precedence over subsequent filings and recordings. The issue here, however, is whether there should be an exception to that rule, and if so, the contours of that exception. I have no quarrel with the majority's conclusion that the doctrine of equitable subrogation provides a legitimate basis for such an exception and that the nature of that exception is described in Restatement (Third) of Prop.: Mortgages § 7.3, at 472 (1997):
(a) If a senior mortgage is released of record and, as part of the same transaction, is replaced with a new mortgage, the latter mortgage retains the same priority as its predecessor, except
(1) to the extent that any change in the terms of the mortgage or the obligation it secures is materially prejudicial to the holder of a junior interest in the real estate,....
The majority, however, finds the exception inapplicable because (1) Yakima Title had "actual notice of Kim's judgment lien before the title policy was issued," majority at 670 (emphasis added), and (2) Kim would be prejudiced if the doctrine were applied.[1] I find the first point not only misleading but irrelevant; whereas the second point is simply wrong. To put the facts in focus a chronology follows:

 CHRONOLOGY
December 5, 1995 Kenneth K. Chang and Yun Ok Chang bought the property in
 question on behalf of their daughter Sharon Lee and her
 husband Stanley Lee for $165,000, of which $130,000 was
 financed by Sterling Trust Company. Clerk s Papers (CP) at 9,
 88.
December 11, 1995 Statutory warranty deed and Sterling deed of trust recorded. CP
 at 88.
April 25, 1997 Kim's default judgment against the Lees entered. CP at 115-17.
April 28, 1997 Kim's default judgment filed with King County Superior Court
 Clerk. CP at 115.
May 16, 1997 Kim's judgment was recorded with Yakima County Auditor's
 Office. CP at 121.
December 22, 1997 Changs quitclaimed one-half of their interest to the Lees. CP at
 88.
March 1998 The Lees procured financing through Pioneer Bank to refinance
 the Sterling deed of trust. CP at 88-89.
March 16, 1998 Effective date of Yakima Title's commitment to insure Pioneer
 Bank's title. CP at 35.
April 9, 1998 As part of the refinance, the Changs quitclaimed their remaining
 one-half interest to the Lees. CP at 31, 88.
April 20, 1998 Lees executed their promissory note to Pioneer Bank as part of
 the refinancing. CP at 178-79.

*674
April 22, 1998 Yakima Title supplemented its commitment to reflect the fully
 vested title in the Lees, the identity of the refinance lender as
 being Pioneer Bank, and title insurance coverage liability in the
 amount of $132,700. CP at 36.
April 28, 1998 Replacement deed of trust in favor of Pioneer Bank recorded. CP
 at 42-51.
May 18, 1998 Pioneer Bank assigns its deed of trust to PHH Mortgage Services
 Corporation. CP at 66.
May 23, 1998 Yakima Title was informed of the assignment. CP at 65.
June 17, 1998 Pioneer Bank's assignment of deed of trust was recorded, but the
 assignee was misnamed. CP at 66,159.
July 13, 1998 Kim actually notifies Yakima Title of his judgment lien.CP at
 149.
July 16, 1998 Corrected assignment of deed of trust from Pioneer to PHH rerecorded.
 CP at 66, 159.
July 17, 1998 Yakima Title issues title insurance policy showing PHH as the
 assignee. CP at 67, 159.
December 10, 1998 Kim gives actual notice to PHH of his judgment lien. CP at 140.
May 10, 1999 PHH tendered defense of its lien position to Yakima Title. CP at
 159.
June 21, 1999 Kim formally informed Yakima Title of his intent to begin execution
 on July 26, 1999. CP at 71.
October 12, 1999 Yakima Title filed motion to intervene and quash writ of execution.
 CP at 91.

ACTUAL NOTICE IRRELEVANT/NONEXISTENT
As to actual notice, the Restatement does not condition application of the doctrine of equitable subrogation upon its absence. Second, there is no claim here that lienholder PHH or Pioneer had actual notice prior to making its loan. Majority at 668. And third, not that it matters, Yakima Title did not have actual notice until after it had issued its March 16, 1998 commitment to insure Pioneer Bank's first lien position in any event. Majority at 667.
1. Equitable subrogation not defeated by actual notice.
Under the Restatement (Third) rule, actual knowledge of a prior lien is irrelevant to application of equitable subrogation.[2] Even those jurisdictions which accept the proposition that actual notice to the potential lienholder undermines equitable subrogation reject the claim that constructive notice should suffice.[3]See Grant S. Nelson & Dale A. *675 Whitman, Real Estate Finance Law § 10.6 (3d ed.1993).
We have also previously held constructive knowledge of a properly recorded lease and option to buy is legally insufficient to deny equitable subrogation. See Coy v. Raabe, 69 Wash.2d 346, 349, 351, 418 P.2d 728 (1966). Of course if constructive knowledge were sufficient to defeat application of the doctrine of equitable subrogation in this jurisdiction, there would be no such doctrine since absent a prior filing or recording there would be no priority to contest.
2. No actual notice to lienholder.
Even in jurisdictions where actual knowledge may defeat equitable subrogation, only knowledge by the lienor may have this effect. Neither Pioneer Bank nor PHH received actual notice of the Kim judgment prior to making the loan. PHH did not receive actual notice of the judgment lien until December 1998, seven months after the refinance was complete.
3. No actual notice to title company until after transaction.
It is the date of the commitment to insure which is relevant (if at all), not the date the policy actually issued. By the terms and conditions of the commitment issued on March 16, the title company undertook to insure title to its insured, save and except identified exceptions as well as encumbrances "if any, created, first appearing in the public records or attaching subsequent to the effective date hereof [March 16, 1998]." CP at 41. At that point Yakima Title became obligated to issue a title insurance policy to its insured, Pioneer Bank (and later its assignee PHH), without excepting the Kim judgment lien because that lien had been filed prior to the date of the commitment and was not expressly excepted. Had Yakima Title attempted to add an exception to the policy not expressed in the commitment it would have breached the commitment.
According to the facts as the majority describes them (majority at 667), the commitment for title insurance was issued on March 16, 1998, Pioneer Bank recorded its deed of trust and second quit claim deed on April 20, but Kim's attorney first informed the title company of its judgment on July 13, 1998. Even the assignment of Pioneer Bank's deed of trust to PHH occurred prior to that, on June 17, 1998 (although it was not re-recorded until July 16).[4] Therefore Yakima Title, much less the real parties in interest, Pioneer and PHH, had no actual notice of the Kim judgment prior to the refinance.

NO PREJUDICE
A legitimate concern under the Restatement (Third) formulation of the rule is whether the prior lienholder would be prejudiced by subrogation to the replacement mortgage or deed of trust. Arguably if the refinance significantly increased the principal balance of the loan, there might be prejudice. By the same token if the terms and conditions of the loan repayment were less favorable to the obligor, that might be prejudicial as well. Here, however, the majority notes that the amount of the indebtedness did not *676 change significantly, whereas the interest rate was reduced from 10.5 percent to 6.75 percent, and the maturity date was extended from 6 years to 30 years, eliminating a balloon payment. Moreover the size of the property subject to the judgment lien doubled.
Under section 7.3 equitable subrogation will not be granted if a change in the terms of the refinance mortgage or the underlying debt is "materially prejudicial" to the holder of a junior interest. Restatement (Third) of Prop.: Mortgages § 7.3(a)(1) (1997). A change is generally deemed materially prejudicial only if (1) it is in the form of an increase in principal amount;[5] (2) it is in the form of an increase in interest rate;[6] or (3) the refinance mortgagee fails to record its mortgage and the intervening lienor takes detrimental action as a result.[7] None of these situations is at hand in this proceeding.
Although this refinance did lead to a small increase in the principal amount, from $130,000 to $132,700, the majority correctly concedes this change is not materially prejudicial. See majority at 669. Furthermore, the refinancing led to a substantial beneficial reduction in interest rate from 10.5 percent to 6.75 percent. Lastly, Pioneer Bank's deed of trust was promptly recorded, and there has been no suggestion Kim has taken any detrimental action in response to any failure on Pioneer Bank's part in this context.
However, the majority apparently finds the extension of time for payment (majority at 670) was prejudicial to the rights of the judgment creditor. But quite to the contrary, an extension of time to repay a loan is generally presumed beneficial to junior lienors, not prejudicial. See, e.g., Crutchfield v. Johnson & Latimer, 243 Ala. 73, 8 So.2d 412, 414 (1942); Lennar N.E. Partners v. Buice, 49 Cal.App.4th 1576, 57 Cal.Rptr.2d 435, 439 (1996) (citing Resolution Trust Corp. v. BVS Dev., Inc., 42 F.3d 1206, 1215 (9th Cir.1994)); Eurovest Ltd. v. 13290 Biscayne Island Terrace Corp., 559 So.2d 1198, 1198 (Fla.Dist.Ct.App.1990); Larson Cement Stone Co. v. Redlim Realty Co., 179 Neb. 134, 137 N.W.2d 241, 245 (1965). But see Citizens & S. Nat'l Bank of S.C. v. Smith, 277 S.C. 162, 284 S.E.2d 770, 772 (1981) (holding extension of senior mortgage resulted in loss of priority because intervening mortgagee had agreed to be subordinated on the assumption the senior mortgage would be fully satisfied on the initial due date).
Instead of a note amortized over 15 years with the full balance due on a balloon payment in 6, the terms of repayment were liberalized to allow amortized payments over 30 years with no balloon. This is anything but prejudicial to junior liens. The elimination of a balloon payment representing 70 percent of the purchase price was beneficial to Kim's junior judgment lien.[8]
Perhaps the majority forgets that this is an action to quash a sheriff's sale initiated by the judgment creditor against the subject property. Had the sheriff's sale gone to fruition, and had there been no refinance, the judgment creditor would simply step into the shoes of the judgment debtor and take title subject to all prior liens, including the one with high interest and a balloon payment in six years.[9] It is hardly a doubtful proposition *677 that the successful bidder would prefer a lower interest rate and 30 years to pay to higher interest and a 6 year balloon.[10] Moreover as a result of the refinance the judgment lien would now attach to all the property not just half, as was the case prior to the refinance. If this is prejudice, what is benefit?

CONCLUSION
Taken on its face the majority opinion cannot support its own conclusion. It confuses the status of title insurer with the property owner insured, relies on "actual notice" which came after the transaction, and misconstrues benefit as prejudice.
I dissent.
MADSEN, J., concurs.
NOTES
[1] When Kim's judgment lien was recorded in Yakima County on May 16, 1997, Washington case law held that any deed of trust encumbering property after entry of default judgment, but before executing, was to be counted as part of the "liens and encumbrances" under RCW 6.13.010(3) before arriving at a net property value upon which a judgment creditor could execute. Robin Miller Constr. Co. v. Coltran, 87 Wash.App. 112, 119, 940 P.2d 661 (1997).
[2] Effective July 25, 1999 the Washington State Legislature amended RCW 6.13.010(3) from "As used in this chapter, the term `net value' means market value less all liens and encumbrances," to adding after encumbrances "senior to the judgment being executed upon and not including the judgment being executed upon."
[3] The parties failed to argue the Coy case in their briefs to the Court of Appeals. Consequently, it was not mentioned in the Court of Appeals' decision.
[4] Kim requested attorney fees in the Court of Appeals, but failed to do so under RAP 18.1 in this Court. Even if Kim had requested fees in this Court, Kim has established no basis to warrant an award of fees.
[1] Justice Chambers' concurring opinion says the doctrine of equitable subrogation is inapplicable because "[t]he transaction involved different mortgagors and different mortgagees." (Chambers, J., concurring, at 672). I can find no such basis to limit the doctrine as formulated by the Restatement, nor does Justice Chambers cite any authority to support his view.
[2] Under the Restatement (Third) of Prop.: Mortgages § 7.6 cmt. e, at 519 (1997), equitable subrogation is appropriate notwithstanding actual knowledge of the intervening lien. Some courts have granted subrogation in spite of actual knowledge in part because, regardless of the subrogee's knowledge, intervening lienors would not be in a worse position. See, e.g., Wilkins v. Gibson, 113 Ga. 31, 38 S.E. 374, 382 (1901); Klotz v. Klotz, 440 N.W.2d 406, 409-10 (Iowa Ct.App.1989); Providence Inst. for Sav. v. Sims, 441 S.W.2d 516, 520 (Tex.1969). At least one court has granted subrogation in spite of actual knowledge without further explanation. See, e.g., Med Ctr. Bank v. Fleetwood, 854 S.W.2d 278, 287 (Tex.Ct.App.1993).
[3] Constructive knowledge by virtue of a failure to discover a properly recorded lien is typically not considered culpable and inexcusable neglect, which would deny equitable subrogation. See, e.g., Smith v. State Sav. & Loan Ass'n, 175 Cal.App.3d 1092, 223 Cal.Rptr. 298, 301 (1985); Rusher v. Bunker, 99 Or.App. 303, 782 P.2d 170, 172 (1989); Mut. Life Ins. Co. of N.Y. v. Grissett, 500 F.Supp. 159 (M.D.Ala.1980); Fed. Land Bank of Springfield v. Smith, 129 Me. 233, 151 A. 420 (1930). At least two courts have granted subrogation in spite of constructive knowledge because to hold otherwise would enable junior lienors to "convert[] the mistake of the lender `into a magical gift for [themselves]'." United States v. Baran, 996 F.2d 25, 29 (2d Cir.1993) (quoting Long Island City Sav. & Loan Ass'n v. Skow, 25 A.D.2d 880, 881, 270 N.Y.S.2d 234 (1966)).
[4] Assignment of a properly recorded mortgage will not cause it to lose priority as against subsequent mortgages or other liens. Id. This is so even though the assignment is unrecorded. Miller v. Am. Sav. Bank & Trust Co., 119 Wash. 243, 250, 205 P. 388 (1922). The critical fact from the standpoint of later purchasers or mortgagees is notice the earlier mortgage exists, not that it has been assigned. 18 William B. Stoebuck, Washington Practice, Real Estate: Transactions § 17.21, at 311 (1995). An unrecorded assignment may be void against subsequent bona fide purchasers for value who take without notice of the preceding mortgage. See Price v. N. Bond & Mortgage Co., 161 Wash. 690, 698, 297 P. 786 (1931). However, since a judgment creditor is not a purchaser, that is not an issue in the case at bar. See RCW 65.08.060(2); Aberdeen Fed. Sav. & Loan Ass'n v. Empire Manufactured Homes, Inc., 36 Wash.App. 81, 84, 672 P.2d 409 (1983) (citing Dawson v. McCarty, 21 Wash. 314, 57 P. 816 (1899)).
[5] See, e.g., Skaneateles Sav. Bank v. Herold, 50 A.D.2d 85, 376 N.Y.S.2d 286, 289-90 (1975).
[6] See, e.g., Shultis v. Woodstock Land Dev. Assocs., 188 A.D.2d 234, 594 N.Y.S.2d 890, 892-93 (1993).
[7] See, e.g., Rock River Lumber Corp. v. Universal Mortgage Corp. of Wis., 82 Wis.2d 235, 262 N.W.2d 114, 119 (1978) (citing 73 Am.Jur.2d Subrogation § 105 (1974); Annotation, Subrogation to Prior Lien of One Who Advances Money to Discharge it and Takes New Mortgage, as against Intervening Lienor, 70 A.L.R. 1396, 1416, 1417 (1931)).
[8] Kim's argument he is prejudiced by having to give up his newly acquired first lien position misses the point of subrogation entirely. Under the equitable subrogation doctrine, Kim would not acquire the first lien position. See Restatement (Third) of Prop.: Mortgages § 7.6 ("Even though the performance would otherwise discharge the obligation and the mortgage, they are preserved and the mortgage retains its priority in the hands of the subrogee.").
[9] The purchaser at an execution sale acquires only the right, title, and interest of the debtor. RCW 6.21.100; White v. McSorley, 47 Wash. 18, 21, 91 P. 243 (1907); Desimone v. Spence, 51 Wash.2d 412, 415, 318 P.2d 959 (1957); Banks v. Morse, 17 Wash.2d 18, 21, 134 P.2d 952 (1943); N. Commercial Co. v. E.J. Hermann Co., 22 Wash.App. 963, 971, 593 P.2d 1332 (1979).
[10] The original note provided the remaining balance shall be paid upon sale. Clerk's Papers (CP) at 176. However, the replacement note makes this a matter of lender discretion. CP at 179. Thus, the replacement note was beneficial, not prejudicial, to the purchaser at a sheriff's sale. Cf. majority at 671 n. 3.