**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
JUNE 16, 2022

_González, C.J._
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
JUNE 16, 2022

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| In the Matter of the General Receivership of EM PROPERTY HOLDINGS, LLC, a Washington limited liability company | ) ) ) ) ) | No. 100066-9 |
| COMMENCEMENT BANK, a Washington banking corporation, | ) ) ) | |
| Petitioner, | ) | En Banc |
| v. | ) ) | |
| EPIC SOLUTIONS, INC., a Washington corporation, | ) ) | |
| Respondent. | ) ) ) | Filed: June 16, 2022 |

MADSEN, J.—This case concerns the priority of mortgage liens, the scope of RCW 60.04.226, and whether to adopt certain sections of the *Restatement (Third) of Property: Mortgages* (Am. Law Inst. 1997). The principal issue before us is whether a senior mortgage holder's future advances clause maintains priority over an intervening junior mortgage on the same property. A future advances clause states that the security in question applies to a present obligation as well as certain future obligations. Historically,

No. 100066-9

at common law this court has distinguished between obligatory and optional future advances. The legislature abrogated that distinction in the construction context when it adopted RCW 60.04.226.

Here, the senior mortgage holder, Epic Solutions Inc., argues that RCW 60.04.226 applies to this case. However, the language and context of the statute plainly demonstrate it applies only to construction liens. Instead, we are guided by common law, which distinguishes between obligatory and optional future advances. Under that rule, any advances that are optional lose priority to any intervening liens.

We are also asked to decide whether or not *Restatement* § 7.3 should be applied in its entirety for modifications of a mortgage. One of our previous cases, *Hu Hyun Kim v. Lee*, 145 Wn.2d 79, 31 P.3d 665 (2001), adopted *Restatement* § 7.3(a) and (b), but did not discuss subsections (c) or (d). Given the facts of *Kim*, we hold that only *Restatement* § 7.3(a) and (b) have been adopted by this court.

The parties and the Court of Appeals have referred to future advances and modification of mortgages interchangeably throughout this case. Though similar, these are different mortgages provisions, they carry different legal consequences, and they are governed by different provisions of the *Restatement*. *Restatement* § 7.3 is principally concerned with the modification of mortgages. But the parties and the court below applied *Restatement* § 7.3 to the future advances clause in the instant mortgage documents. *Restatement* § 2.3 is the provision that governs future advances while *Restatement* § 7.3 governs mortgage modifications. Moreover, applying both

2

No. 100066-9

*Restatement* § 7.3 and RCW 60.04.226 to a future advances clause creates a conflict because the statute does not provide a "stop-notice" protection while the *Restatement* does.

For the reasons discussed below, we read RCW 60.04.226 as applying only in the construction context. We reverse the Court of Appeals and remand to the trial court to determine the correct priority of claims by applying the common law rules outlined in our cases for both future advances and modifications.

FACTS

In 2015, Epic was hired to provide consulting services to TTF Aerospace Inc., EM Property Holdings (EMP), and the owners of these companies.[1] The owners and Epic signed an amended and restated service agreement on August 7, 2015. The agreement did not state an end date but included a termination clause stating the agreement could be terminated by mutual agreement or upon 30 days' written notice by either party.

On April 19, 2017, the owners issued a promissory note to Epic for $344,762.50. The note was secured by a deed of trust to a property in Auburn, also dated April 19, which was recorded on April 21. The deed of trust stated:

> THIS DEED IS FOR THE PURPOSE OF SECURING PERFORMANCE of each agreement of Grantor(s) incorporated by reference or contained herein and payment of the sum of THREE HUNDRED FORTY-FOUR THOUSAND SEVEN HUNDRED SIXTY-TWO DOLLARS AND FIFTY CENTS ($344,762.50) with interest thereon according to the terms of a promissory note of even date herewith, payable to Beneficiary or order and made by Bradford Wilson, Timothy Morgan, and Philip Fields; all renewals, modifications or extensions thereof, and also such further sums as

---

[1] Epic is an S corporation owned by Douglas Hettinger. In his role as president of Epic, Hettinger provided management consulting services to TTF, EMP, and their owners.

3

> may be advanced or loaned by Beneficiary to Bradford Wilson, Timothy Morgan, and Philip Fields, or any of their successors or assigns, together with interest thereon at such rate as shall be agreed upon.

Clerk's Papers at 98.

The owners amended the original promissory note on September 30, 2017, increasing the principal amount to $546,737.50, and granted an amended deed of trust on October 5. The amended deed was recorded on October 6 at 8:49 AM.

On October 2, Elite Aviation Interiors made a loan of $1.5 million to TTF, who issued a promissory note secured by a deed of trust for the Auburn property. The parties also signed a management agreement, which stated that Elite would appoint an Elite employee to work for TTF and support its operations. The deed of trust securing the loan was recorded on October 6 at 12:13 PM.

The owners amended the promissory note a second time in November, increasing the principal amount owed to Epic to $731,580.99. The deed of trust was also amended a second time on November 8 and recorded on November 13.

On November 9, the owners, through EMP, granted a deed of trust to a different entity, Commencement Bank. The deed secured prior loans granted by Commencement, up to a maximum of $1.5 million with the Auburn property as collateral. Commencement recorded its deed of trust on November 27. When it obtained its security interest, Commencement signed a subordination agreement with Elite, giving Commencement a priority position over Elite.

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 100066-9

On February 26, 2019, the owners issued a third amendment to the original commercial promissory note, increasing the principal owed to Epic to $1,515,000.00. The deed of trust was not amended a third time. On August 7, 2019, the owners issued a declaration, unrecorded, stating that the current amount owed by TTF to Epic totaled $1,788,406.64.

In February 2020, a general receiver was appointed to take control of EMP's assets, including the Auburn property. Both Commencement and Epic filed claims in the receivership. Epic claimed $2,127,073.06 plus interest and attorney fees for services rendered. Commencement objected to Epic's claim. The Auburn property sold for $10,500,000.00. After the receiver paid other debts owed by TTF, the net proceeds from the sale of the property remaining for Epic's and Commencement's claims were $2,908,493.00.

The trial court ruled that Epic had priority over Commencement for the full amount it claimed, based on RCW 60.04.226 and *Kim*, noting that the priority of the future advances clause related back to the original deed of trust. The Court of Appeals affirmed in an unpublished opinion. *In re Gen. Receivership of EM Prop. Holdings, LLC*, No. 81686-1-I (Wash. Ct. App. July 26, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/816861%20orderandopinion.pdf. Commencement appealed to this court, and we granted review. *In re Gen. Receivership of EM Prop. Holdings, LLC*, 501 P.3d 150 (2022).

No. 100066-9

ANALYSIS

Since neither party disputes the facts in this case, our task of determining lien priority is a question of law, subject to de novo review. *Kim*, 145 Wn.2d at 85-86.

1. RCW 60.04.226 Did Not Abrogate the Common Law Optional/Obligatory Distinction for Future Advances Outside the Construction Context

The common law rule for mortgage priority is that the first party to obtain a mortgage has first priority if multiple parties seek to realize upon their security during a foreclosure, also known as "first in time, first in right." *See, e.g.*, *Hollenbeck v. City of Seattle*, 136 Wash. 508, 514, 240 P. 916 (1925). However, Washington has a "race-notice" recording act, which grants priority to a party who obtains a mortgage later in time as long as that party records the mortgage first and had no actual or constructive notice of the previous mortgage. RCW 65.08.070.

At issue here is the impact of a future advances clause on the priority of the parties' liens. A *future advances* clause in a mortgage secures a loan or extension of credit that the lender will disburse at a future date. 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 17.16 at 299 (2d ed. 2004). This type of mortgage is "one that contains a clause stating that it is security, not only for a present obligation, but for all or a certain class of obligations the mortgagor may incur in the future." *Id.* Most commonly used in the construction context, these mortgages can "cause some interesting and complex priorities disputes between the . . . lender and other lien creditors." *Id.* For example, this type of mortgage

6

No. 100066-9

raises a question of lien priority when a borrower obtains an intervening loan before the initial lender loans additional funds under the future advances clause.

Historically, our courts have applied a distinction between two types of future advances: optional advances and obligatory advances. *See, e.g.*, *Elmendorf-Anthony Co. v. Dunn*, 10 Wn.2d 29, 116 P.2d 253 (1941); *Nat'l Bank of Wash. v. Equity Inv'rs*, 81 Wn.2d 886, 506 P.2d 20 (1973). Pursuant to this distinction, any advances that are obligatory maintain priority over the intervening loan, but any advances deemed optional lose priority. *Elmendorf-Anthony*, 10 Wn.2d at 37.

The optional/obligatory distinction was at issue in *National Bank*. In *National Bank*, a construction lender included a protective clause in the mortgage stating the bank could withhold progress payments "'in the judgment of the Lender'" if it determined the construction was not done in a "workmanlike manner." 81 Wn.2d at 898. This court held that the protective clause gave the bank so much discretion that any future advances would be considered optional. *Id.* This meant that any future payments distributed by the lender would lose priority to any subsequent liens on the property of which the lender had knowledge. *Id.* at 901. This decision left construction lenders in a difficult position as it was common for such lenders to use future advances clauses as a way to protect against inefficient use of funds by contractors by conditioning future payments on satisfactory performance. 18 STOEBUCK & WEAVER, *supra*, § 18.25 at 351-52.

No. 100066-9

In response to *National Bank*, the legislature passed an act adding new sections to RCW 60.04. SUBSTITUTE H.B. 264, 43d Leg., 1st Ex. Sess. (Wash. 1973);[2] *see* Richard Paroutaud, *Mechanics' Liens: The "Stop Notice" Comes to Washington*, 49 WASH. L. REV. 685 (1974) (explaining the legislative history of the act). Section 3 of this act abrogated the optional/obligatory distinction, stating that all sums secured by the mortgage or deed of trust maintain priority regardless of whether they are obligatory. Former RCW 60.04.220 (1973).[3] Section 2 created a "stop-notice" mechanism for potential lien claimants. Former RCW 60.04.210 (1973).[4] Under this provision, potential lien claimants who have not received payment in a timely manner can file notice of the nonpayment with the construction lender. The lender must then withhold the amount owed to the lien claimant from subsequent payouts to the borrower. If the lender fails to withhold funds, the mortgage or deed of trust securing the lender's loan loses priority to the lien claimant to the extent of the funds wrongfully disbursed.

Turning to the case at hand, Epic contends that RCW 60.04.226 applies to its mortgage and Commencement disagrees. Epic argues that under a plain reading, RCW 60.04.226 broadly applies to any mortgage or deed of trust, including those outside the

---

[2] The act was titled "AN ACT Relating to mechanics' and materialmen's liens and construction loan mortgages; and adding new sections to chapter 60.04 RCW."

[3] This provision was codified at RCW 60.04.220 and was titled "Interim or construction financing – Priorities." Former RCW 60.04.220 was repealed in 1991 and recodified with minor changes as RCW 60.04.226 (LAWS OF 1991, ch. 281, § 23). Other than updated cross-references to other statutory provisions, the text of the updated statute is the same as the version originally passed in 1973.

[4] This provision was initially codified at RCW 60.04.210. Although the language was changed slightly in the recodified version (RCW 60.04.221 (LAWS OF 1992, ch. 126, § 13)), the current iteration provides a similar process that allows potential lien claimants to enforce their liens.

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

construction context.  Epic's Suppl. Br. at 11-18.  Commencement argues that RCW

60.04.226 does not apply outside of the construction lending context and that the

optional/obligatory distinction is still applicable outside that context.  Suppl. Br. of

Appellant at 11-17.  The Court of Appeals agreed with Epic, holding that the

unambiguous language of the statute applies to all deeds of trust.  *EM Prop. Holdings*,

slip op. at 10.

When interpreting a statute, we begin by examining the statute's plain meaning.

*Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).  We

ascertain the "plain meaning" by examining the provision itself, related statutes or other

provisions of the same act in which the provision is found, and the statutory scheme as a

whole.  *Id.* at 10.

RCW 60.04.226 states:

Financial encumbrances—Priorities.

Except as otherwise provided in RCW 60.04.061 or 60.04.221, any
mortgage or deed of trust shall be prior to all liens, mortgages, deeds of
trust, and other encumbrances which have not been recorded prior to the
recording of the mortgage or deed of trust to the extent of all sums secured
by the mortgage or deed of trust regardless of when the same are disbursed
or whether the disbursements are obligatory.

(Boldface omitted.)

Epic urges that the use of "any" and "all" requires a broader reading of the statute

beyond the construction context.  However, the statutory scheme and related provisions

do not support Epic's argument.

9

No. 100066-9

First, chapter 60.04 RCW, titled "Mechanics' and materialmen's liens," is a statutory creation in derogation of the common law. *Dean v. McFarland*, 81 Wn.2d 215, 219-20, 500 P.2d 1244 (1972); *Tsutakawa v. Kumamoto*, 53 Wash. 231, 236, 101 P. 869, 102 P. 766 (1909). Statutes in derogation of the common law are construed strictly to apply only to those who fall within the terms of the statute. *Williams v. Athletic Field, Inc.*, 172 Wn.2d 683, 695, 261 P.3d 109 (2011). The chapter's section requiring liberal construction, RCW 60.04.900, is applicable only once it has been determined that the persons at issue come within the operation of the act. *Id.* (quoting *De Gooyer v. Nw. Tr. & State Bank*, 130 Wash. 652, 653, 228 P. 835 (1924) *adhered to on reh'g*, 132 Wash. 699, 232 P. 695 (1925)).

Chapter 60.04 RCW applies to liens from "any person furnishing labor, professional services, materials, or equipment for the improvement of real property." RCW 60.04.021. The entirety of the chapter focuses on the effects of such liens. *See, e.g.*, RCW 60.04.061 (priority of lien), .071 (release of lien rights), .091 (contents of lien), .121 (assignment of lien). Therefore, the placement of RCW 60.04.226 in chapter 60.04 RCW suggests the statute applies more narrowly to construction loans.

Moreover, in order to encourage lending, it is important that potential lenders have notice and the opportunity to make informed decisions. A potential lender outside of the construction context is unlikely to check chapter 60.04 RCW when considering the potential priority implications of providing a loan. Given the surrounding provisions, it is clear that RCW 60.04.226 is intended to apply only to construction loans.

10

No. 100066-9

Second, as noted above, the predecessors to RCW 60.04.226 and RCW 60.04.221 were adopted in the same bill. Viewed together, these two statutes balance the equities between senior lenders, junior lenders, and borrowers. RCW 60.04.226 protects construction lenders by allowing them to maintain the priority of future advances whether those advances are optional or obligatory. However, applied alone, this provision could have a consequential impact on borrowers. Junior lenders may be hesitant to provide a subsequent mortgage secured by the borrower's property because they are at risk of losing priority to any future advances provided by the senior lender. In the construction context, a subcontractor with a potential lien would always be lower in priority to the primary construction lender and may find difficulty enforcing their lien. The stop-notice provision in RCW 60.04.221 addresses this problem by allowing an intervening lien claimant to give the construction lender notice of their claims. By doing so, the claimant can be assured of receiving payment directly from the lender or gaining priority over the lender.

By enacting these provisions, the legislature struck a balance between the interests of construction lenders and intervening claimants. However, RCW 60.04.221 provides a stop-notice provision only when the lender is providing interim or construction financing. When viewing the provisions together, we conclude the legislature intended RCW 60.04.226 to apply narrowly to the construction context. To conclude otherwise would lead to the very concerns that led the legislature to adopt RCW 60.04.226.

We hold that RCW 60.04.226 does not apply in this case.

11

No. 100066-9

2. *Restatement (Third) of Property: Mortgages* § 7.3 Does Not Apply in This Context

In addition to urging application of RCW 60.04.226 to the present case, Epic argues that this court implicitly adopted *Restatement* § 7.3 in its entirety in *Kim*. In *Kim*, this court applied *Restatement* § 7.3(a) and (b), which applies to the *replacement* and *modification* of mortgages, in a case involving subrogation. The *Kim* court cited this section to support its adoption of the principal of equitable subrogation as a matter of first impression. 145 Wn.2d at 88-89.

In *Kim*, the Changs obtained a loan from lender A to purchase a home for their daughter and son-in-law, the Lees. *Id.* at 82. Two years later, Kim obtained a judgment lien against the Lees and properly recorded his lien. *Id.* at 82-83. Soon after, the Changs gifted the house to the Lees, who decided to refinance the original loan to take advantage of lower interest rates. *Id.* at 83. The Lees obtained a new loan from lender B, lowering their interest rate and stretching the maturation date from 6 years to 30 years. *Id.* at 87-88. One of the questions presented to the court was whether or not lender B should maintain lien priority over the intervening judgment lien. *Id.* at 85-86.[5]

On review, this court started by discussing the doctrine of equitable subrogation, a doctrine that allows a mortgage *refinance lender* to maintain priority position if equity allows. *Id.* at 87-88. The court then stated, "We adopt the principle of subrogation in the

---

[5] This case was further complicated by the fact that the Lees' title insurance company failed to discover the judgment lien when it recorded the deed of trust for the new loan. *Kim*, 145 Wn.2d at 83-84.

12

No. 100066-9

mortgage loan context as set forth in the *Restatement (Third) of Property: Mortgages* § 7.3, as follows . . . ." *Id.* at 89.

Some examples of the intended application of *Restatement* § 7.3 include a construction lender who releases an existing mortgage and immediately records a new mortgage or a farmer who receives a one-year mortgage then subsequently "renews" the mortgage with the same lender. *Restatement* § 7.3 cmt. a. Essentially, the *Restatement* authors intended this section to apply to cases where a senior lender has an existing mortgage and then chooses to modify or renew that mortgage under new terms with the same borrower. This section was not meant to apply to refinancing situations where a *new* lender seeks to maintain the priority of the original lender when the borrower seeks to refinance the original loan, as was the case in *Kim*.

*Restatement* § 7.6, on the other hand, directly relates to equitable subrogation, which was the issue in *Kim*.[6] Under § 7.6(a), a new lender can maintain the priority of the initial lender through subrogation to the extent necessary to prevent unjust enrichment. The *Kim* court acknowledged these equitable concerns and cited to the comments of *Restatement* § 7.6 multiple times. 145 Wn.2d at 88-90. The court also explicitly noted that it was applying the equitable principles behind the *Restatement*'s rules for replacement and modifications, as set forth in *Restatement* § 7.3(a) and (b), to support its application of equitable subrogation. *Id.* at 89.

---

[6] Our court has since explicitly adopted *Restatement* § 7.6 in *Bank of America, NA v. Prestance Corp.*, 160 Wn.2d 560, 160 P.3d 17 (2007).

13

No. 100066-9

The court applied *Restatement* § 7.3 because the terms of the new loan obtained by the Lees were *modified* from the initial loan. *Id.* at 90. The court also referenced the fact that although the borrower changed (from the Changs to the Lees), the rules of modification apply because the intent of both parties was always for the Lees to obtain the home. *Id.*

The parties here argue over how much of *Restatement* § 7.3 *Kim* adopted. The Court of Appeals held that *Kim impliedly* adopted subsection (c) because of the reference to that subsection in subsection (b).[7, 8] *EM Prop. Holdings*, slip op. at 6.

Commencement argues that *Kim* adopted only subsections (a) and (b) and that the Court of Appeals' decision undercuts *Kim*'s holding by allowing a modified mortgage to maintain priority despite material prejudice to a junior lienholder. In contrast, Epic argues that *Restatement* § 7.3 attempts to balance the equities between the parties and makes the most sense when read as a whole.

As noted above, *Kim* adopted the principles of *Restatement* § 7.3(a) and (b) to support its application of equitable subrogation. The court did not analyze or discuss the implications of adopting *Restatement* § 7.3 as it applies to the *modification* of a

---

[7] *Restatement* § 7.3(b) states, "If a senior mortgage or the obligation it secures is modified by the parties, the mortgage as modified retains priority as against junior interests in the real estate, except to the extent that the modification is materially prejudicial to the holders of such interests and is not within the scope of a reservation of right to modify as provided in Subsection (c)."

[8] As noted above, the Court of Appeals mistakenly applied this rule to the *future advances* clause in Epic's deed of trust. We instead take this opportunity to discuss the extent to which *Restatement* § 7.3 applies for *modification* clauses.

14

mortgage.[9]  We reject the argument that *Kim* implicitly adopted *Restatement* § 7.3(c) and

(d).[10]  We hold that *Restatement* § 7.3 applies narrowly to the facts of *Kim* and instead

apply the common law in this case as it pertains to modifications.[11]

> 3.  The Common Law Optional/Obligatory Distinction To Determine Lien Priority
> Applies to Future Advances Clauses outside the Construction Context

Under the common law rule, if a mortgage secures future advances that the

mortgagee is not obligated to make—and thus are optional—any future advances are

subordinate to any intervening encumbrance made between the initial mortgage and the

advance when made with actual knowledge of the intervening encumbrance.  *Elmendorf-*

*Anthony*, 10 Wn.2d at 36.

This rule was intended to protect both borrowers and junior lenders and to

promote efficiency in the lending market.  If a mortgage includes a future advances

clause that allows the mortgagee use of property to secure future loans, then the

mortgagor would find it difficult to obtain additional financing from other lenders

---

[9] It is not unusual for courts to adopt only part of a *Restatement* section.  *See, e.g.*, *Gerlach v. Cove Apts., LLC*, 196 Wn.2d 111, 133-34, 471 P.3d 181 (2020) (declining to adopt *Restatement (Second) of Property: Landlord and Tenant* § 17.6(2) (Am. Law Inst. 1977) despite our court's previous adoption of § 17.6(1)); *McNamara v. Koehler*, 5 Wn. App. 2d 708, 716 n.7, 429 P.3d 6 (2018) (noting that Washington courts have adopted *Restatement (Second) of Torts* § 611 (Am. Law Inst. 1977), but they have not adopted the accompanying self-reporting exception in comment c to that section).

[10] Adopting *Restatement* § 7.3 in full without also adopting *Restatement* § 2.3, which pertains to future advances, will result in inconsistent outcomes between modifications and future advances.  There may be benefits to adopting both sections at this time.  However, neither party briefed this issue or discussed *Restatement* § 2.3, and we decline to take this step without argument or briefing.

[11] Absent statutory language to the contrary, the general common law rule is that "liens take precedence in order of time."  *Hollenbeck*, 136 Wash. at 514.  This means that a properly recorded intervening mortgage would take priority over any future modifications to a senior mortgage.

15

because those lenders would not be willing to offer a loan that risks losing priority to any future advances offered by the senior mortgagee.  In contrast, if the future advances are obligatory, then future lenders can be assured that there is a maximum limit to the future advances and can calculate with certainty the potential risk involved when deciding whether to provide a mortgage.

Under a rule where future advances that are optional lose priority, once the initial mortgagee has notice of an intervening encumbrance, they can decide whether or not to advance the additional funds, knowing those subsequent loans will be lower in priority to the intervening encumbrance.  Thus, we hold that the common law optional/obligatory distinction for future advances applies outside of the construction context.

We are skeptical as to whether there is a future advances clause in the contract at issue.  However, this is a fact-finding issue, and we leave it to the lower court to apply common law principles for future advances and modifications to determine the proper lien priority.

> 4.  <u>We Decline To Decide Whether or Not Epic's Deed of Trust with a Future Advances Clause Was Required To Directly Reference the Underlying Service Agreement or State a Maximum Amount</u>

We need not reach the issue of whether or not a future advances clause needs to directly reference the service agreement or state the maximum obligation secured in order to resolve this case.  The common law rule is that any future advance that is optional loses priority to any subsequent mortgages that come before the optional advances are distributed.  This means that even if Epic's deed of trust secured subsequent future

16

No. 100066-9

advances, those advances would lose priority to Commencement's intervening claims to the extent that the advances were optional.

Commencement states that the language in Epic's deed of trust was too broad and that the deed of trust should have directly referenced the underlying security agreement. Commencement argues that allowing such a broad reading of the deed of trust is unfair because it does not give sufficient notice to junior lienholders that they may lose priority to such advances. However, the common law optional/obligatory distinction resolves this issue and protects junior lienholders by giving those lienholders priority over optional future advances. Thus, under our current common law rule, it is unnecessary to decide if a future advances clause is required to contain a statement of the maximum amount that may be secured by the mortgage.

5. <u>Attorney fees</u>

Epic argues here, as it did in the Court of Appeals, that it is entitled to attorney fees based on the service agreement and promissory notes it entered into with TTF. But Commencement was not party to either of these contracts, and so we deny attorney fees based on the contracts. Epic also argues that it is entitled to fees based on equitable grounds because it would not have been subject to litigation but for Commencement's objection. Our court may award attorney fees on equitable grounds when a third party is subject to litigation as a natural and proximate consequence of another party's wrongful act. *Wells v. Aetna Ins. Co.*, 60 Wn.2d 880, 882, 376 P.2d 644 (1962). However, Epic

17

No. 100066-9

does not point to any wrongful acts by Commencement that were the proximate cause of this litigation. We deny attorney fees on equitable grounds.

CONCLUSION

RCW 60.04.226 is inapplicable to this case, and so the common law optional/obligatory distinction for future advances clauses applies. We also decline to extend the application of *Restatement* § 7.3 and instead find that the common law rules for both future advances and modifications should apply. We reverse the Court of Appeals and remand this case to the trial court to determine the correct priority of claims consistent with this court's conclusions.

_____
Madsen, J.

WE CONCUR:

_____        _____
Gonzáles, C.J.                                                    Gordon McCloud, J.

_____        _____
Johnson, J.                                                            Yu, J.

_____        _____
Owens, J.                                                              Whitener, J.

_____        _____
Stephens, J.                                                          Staab, J.P.T.

18