LESTER R. SHULTIS et al., Respondents, v WOODSTOCK LAND DEVELOPMENT ASSOCIATES et al., Defendants, and G & G MORTGAGE INVESTORS, Appellant.

Third Department, March 11, 1993

APPEARANCES OF COUNSEL

*Richard I. Cantor,* Poughkeepsie, for appellant.

*Meiselman, Farber, Packman & Eberz, P. C.,* Poughkeepsie *(Laurence J. Lebowitz* and *Myra I. Packman* of counsel), for respondents.

OPINION OF THE COURT

MAHONEY, J.

In December 1987, plaintiffs conveyed a 500-acre tract of land located in Ulster County to defendant Woodstock Land Development Associates for the sum of $1,000,000. Woodstock met the purchase price by paying plaintiffs $500,000 in cash and executing a $500,000 balloon payment note in their favor. The note provided for quarterly payments of interest at 9% and two principal payments of $250,000 each due on December 2, 1988 and December 2, 1989 and was secured by a duly recorded first mortgage. Thereafter, Woodstock executed a second mortgage on the property in favor of defendant G & G Mortgage Investors to secure a $300,000 loan. By its terms, as well as by its nature, the G & G mortgage was subordinate to plaintiffs' $500,000 purchase-money mortgage.

When Woodstock was unable to make the first principal payment by the date specified in the note, it commenced negotiations with plaintiffs regarding a modification. Rather than pursue foreclosure, plaintiffs entered into an agreement in July 1989 whereby the terms of the original note and mortgage were modified (hereinafter the first modification). Among other things, under the first modification Woodstock made a $154,627.36 principal payment in return for the release of 152.5 of the 500 acres from the mortgage lien, the due date for payment of the remaining principal balance ($345,972.64) was extended to June 30, 1990 and the interest rate was increased from 9% to 11%. It is undisputed that G & G expressly agreed to these changes, in writing, and that the writing contained an acknowledgment that G & G's mortgage would continue its subordinate status (hereinafter the subordination agreement).

Unfortunately, Woodstock was unable to meet its obligations under the first modification. This situation prompted formulation of a second modification in July 1990. Under this agreement, the due date for payment of the outstanding principal balance was extended until December 1, 1990, the interest rate was raised to 16% and a new interest schedule

was created. Plaintiffs did not obtain G & G's consent to the second modification and entered into no subordination agreement relative to it. When Woodstock was unable to pay off the principal balance by the extended date contained in the second modification, plaintiffs were unwilling to negotiate further. They commenced the present foreclosure action and, following joinder of issue, moved for summary judgment. Woodstock did not mount any opposition to the motion. G & G, on the other hand, sought dismissal of the action against it claiming principally that because the second modification operated to prejudice its rights as junior lienor and to impair its security, its assent to the modification was necessary. According to G & G, plaintiffs' failure to obtain its consent resulted in G & G obtaining a superior equity and elevated the G & G mortgage to a position superior to that of plaintiffs' mortgage.

Supreme Court concluded that G & G failed to demonstrate material prejudice or substantial impairment of its security as a result of the second modification so as to warrant elevating it in its entirety to a superior status. The court did, however, find that G & G was entitled to priority over plaintiffs with respect to the difference between the outstanding balance due under the terms of the first and second modifications. With that caveat, the court granted plaintiffs' motion. This appeal by G & G ensued.

We affirm. It is well established that while a senior mortgagee can enter into an agreement with the mortgagor modifying the terms of the underlying note or mortgage without first having to notify any junior lienors or to obtain their consent, if the modification is such that it prejudices the rights of the junior lienors or impairs the security, their consent is required (see, Empire Trust Co. v Park-Lexington Corp., 243 App Div 315, 321; 100 Eighth Ave. Corp. v Morgenstern, 3 Misc 2d 410, 414, mod on other grounds 4 AD2d 754; Remodeling & Constr. Corp. v Melker, 65 NYS2d 738, affd 270 App Div 1053; Diamond v Tau Holding Corp., 131 Misc 446; cf., Schwartz v Smith, 143 App Div 297, 300, affd 207 NY 714). Failure to obtain the consent in these cases results in the modification being ineffective as to the junior lienors (see, Remodeling & Constr. Corp. v Melker, supra) and the senior lienor relinquishing to the junior lienors its priority with respect to the modified terms (see, e.g., Skaneateles Sav. Bank v Herold, 50 AD2d 85, affd 40 NY2d 999). While this sanction ordinarily creates only the partial loss of priority noted above, in situa-

tions where the senior lienor's actions in modifying the note or mortgage have substantially impaired the junior lienors' security interest or effectively destroyed their equity, courts have indicated an inclination to wholly divest the senior lien of its priority and to elevate the junior liens to a position of superiority (see, *Empire Trust Co. v Park-Lexington Corp., supra).*

Here, Supreme Court concluded that while G & G was entitled to priority over plaintiffs with respect to the sum representing the difference in outstanding balances due under the terms of the first and second modifications, it failed to establish, as a matter of law, that its security interest was so impaired or the property's equity was so destroyed as to warrant judicially elevating G & G into the position of senior lienor. We agree. The net effect of the second modification was to extend Woodstock's time to make the final principal payment by a period of six months and to increase the interest payable thereon. While precedent suggests that extending the time of payment does not, in and of itself, work prejudice upon junior lienors so as to require their consent (see, *Schwartz v Smith, supra,* at 300-301), changing the interest rate on the loan and bringing the additional interest charges within the lien of the mortgage does work prejudice inasmuch as the change increases the total amount of indebtedness placed prior to the subordinate lien (see, *Remodeling & Constr. Corp. v Melker, supra; cf., Schwartz v Smith, supra,* at 301). Accordingly, G & G's consent was necessary in order for the interest adjustment contained in the second modification to be effective against it.

However, as previously noted, the failure to obtain consent when required does not automatically result in an elevation of the junior lien over its senior counterpart. Based upon the sparse evidence put forth by G & G, it appears that the effect on G & G of the interest change here is relatively minor, approximately $7,200. While this obviously works some prejudice upon G & G, when viewed in context with the proportion plaintiffs' debt bears to the total value of the remaining security (i.e., $345,000/$845,372.64 or 41%), this minor increase in the total debt due plaintiffs as a result of the second modification is hardly of the magnitude to create substantial prejudice or to seriously impair the security for G & G's $300,000 subordinate debt. Indeed, when the two debts are aggregated ($645,000), there remains close to $200,000 of equity in the mortgaged property. This, combined with the

fact that the second modification was made, not as part of a calculated scheme to foreclose G & G of its rights as was the case in *Remodeling & Constr. Corp. v Melker (supra)* but rather as a last-ditch attempt by plaintiffs to save the loan in the face of continuing default by Woodstock and to *avoid* foreclosure, acts which actually benefitted G & G by continuing its cash flow and preserving its lien, we do not believe that this is an appropriate case in which to effect a wholesale subordination of plaintiffs' lien to G & G's lien. Any prejudice visited upon G & G as a result of the interest increase was successfully abated by giving it priority over that amount representing the increased interest due and owing plaintiffs as a result of the unauthorized second modification.

We have reviewed the remaining contentions propounded by G & G and find them to be without merit. G & G's contention that the subordination agreement gave it priority over plaintiffs' mortgage to the extent of $154,627.36 is illogical and contrary to the plain language of that agreement and the terms of the first modification. A further reading of the subordination agreement belies G & G's alternate argument that plaintiffs were required to give it notice of Woodstock's default prior to commencement of the foreclosure action.

WEISS, P. J., LEVINE, CASEY and HARVEY, JJ., concur.

Ordered that the order is affirmed, with costs.