Filed 7/18/13  La Paz Investments v. U.S. Bank CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| LA PAZ INVESTMENTS et al., | |
| Plaintiffs and Respondents, | E055080 |
| v. | (Super.Ct.No. RIC1113842) |
| U.S. BANK, N.A., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Paulette Durand-Barkley, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Reversed and remanded with directions.

Katten Muchin Rosenman, Joshua Wayser and Yonaton Rosenzweig for Defendant and Appellant.

Spach, Capaldi & Waggaman and Madison S. Spach, Jr., for Plaintiffs and Respondents.

# I

## INTRODUCTION

Defendant and appellant U.S. Bank National Association (U.S. Bank) appeals from an order granting a preliminary injunction (Code Civ. Proc., § 904.1, subd. (a)(6)) against U.S. Bank's foreclosure on deeds of trust securing about $40 million in construction loans made by a predecessor bank, PFF Loan & Trust (PFF), and assumed by U.S. Bank. Plaintiffs and respondents, La Paz Investments (La Paz) and the Maurer Development Co. Money Purchase Pension Plan (the Maurer Plan), are junior lienholders who contend U.S. Bank adversely modified their subordination agreements, causing U.S. Bank to lose its senior priority.

In an action for declaratory relief, La Paz and the Maurer Plan (collectively Maurer) seek permanently to enjoin U.S. Bank from foreclosing on real property in Riverside County and for a declaration that U.S. Bank's senior deeds of trust on the properties should not maintain priority over Maurer's junior deeds. In a separate action, U.S. Bank seeks to quiet title and declaratory relief.

After a thorough review of the record, we do not find any material modifications to the subordination agreements which increased the risk of default by Osborne Development Corporation (Osborne), the obligor under U.S. Bank's construction loans. Based on the record before us, U.S. Bank is entitled to maintain its senior priority over any subordinated junior lienors. Because respondents have not established the likelihood of success in prevailing in the underlying proceedings, the trial court abused its discretion in granting the motion for preliminary injunction. We reverse and remand.

2

II

FACTUAL AND PROCEDURAL BACKGROUND

The facts, as alleged in the complaint and set forth in the declarations concerning the preliminary injunction, are essentially undisputed, except as noted, in the following summary.

*A.  2000 Sale from La Paz to Osborne*

In 2000, La Paz sold undeveloped property in Hemet to Osborne Development Corporation (Osborne).  The purchase price included $1.6 million in cash, a note for another $1.6 million, and a profit participation agreement for 35 percent of the total net profits in a subsequent sale.  As part of the transaction, Osborne and the Maurer Plan entered into a second profit participation agreement for 15 percent of the total net profits.

*B.  2005 Sale from Osborne to Winchester*

In 2005, Osborne transferred the property to Osborne Development-Winchester Ranch, L.P. (Winchester).  Winchester assumed all Osborne's obligations to La Paz and gave La Paz a note and deed of trust for $7.262 million (the La Paz Note) as a substitute for the remaining purchase price on the Hemet property.  Additionally, Winchester gave the Maurer Plan a note and deed of trust for $3,112,286 (the Plan Note) as a substitute for the profit participation agreement.

*C.  2006 Sale for Winchester to Osborne*

In January 2006, Osborne purchased the Hemet property and assumed the La Paz note and the Plan Note.  The La Paz note and the Plan Note were amended four times.  As of January 1, 2011, the combined amount owing from Osborne to Maurer under the

3

La Paz note and the Plan note was nearly $9 million, with interest continuing to accrue from that date.

*D. The Construction Loans*

In February 2006, to facilitate residential development of the Hemet property, Osborne executed a note and deed of trust for a construction loan from PFF in the amount of $29.422 million. The Maurer Plan and La Paz executed subordination agreements, making their liens junior in interest to the construction loan from PFF. A second construction loan in the amount of $10,589,400, and related subordination agreements, were executed and recorded in June and July 2007.[1]

The notes and deeds of trust held by PFF contained provisions for payment to PFF of the loan principal and interest of 8.5 percent and 9.25 percent, expenditure advancements or protective advancements, and cross-defaults of any other agreements between Osborne and PFF. The term "indebtedness," as used to describe the construction loans, was defined to include "all renewals of, extensions of, modifications of, consolidations of, and substitutions" for the subject notes and trust deeds and related documents.

The express language of the subordination agreements executed by Maurer was as follows: ". . . in order to induce Lender [PFF] to make the loan above referred to [the construction loans], it is hereby declared, understood, and agreed as follows:

---

[1] Another construction loan in the amount of $11.488 million, and related subordination agreements, were executed and recorded in November 2006. This loan has been repaid.

4

"(1) That said deed of trust securing said note in favor of Lender [PFF], and any renewals or extensions thereof, shall unconditionally be and remain at all times a lien or charge on the property . . . prior and superior to [Maurer's] lien or charge." Additionally, "Beneficiary [Maurer] declares, agrees, and acknowledges that [¶] (a) He consents to and approves (i) all provisions of the note and deed of trust in favor of Lender [PFF] . . . ."

Thus, according to U.S. Bank and disputed by Maurer, the subordination agreements provided that Maurer consented to all provisions in PFF's deeds of trust and the underlying notes, including the rights (1) to assert "cross-defaults" such that a breach by Osborne of any of its obligations to PFF could result in the declaration of a default under the PFF deeds; (2) to recover from Osborne the loan principal plus interest at a minimum of 8 percent per year or more based on the prime rate; and (3) to make expenditure advancements to protect the properties, which could be added to the indebtedness. Maurer further agreed that Osborne's failure to perform could justify foreclosure either under existing or later deeds securing the indebtedness.

*E. Modifications by U.S. Bank and Nonjudicial Foreclosure*

Osborne eventually defaulted on its monthly loan payments. In November 2008, PFF became defunct and U.S. Bank became its successor in interest on the construction loans.

In March 2009, in lieu of foreclosure, U.S. Bank and Osborne agreed to forbearance agreements with various modifications of the construction loans, including extending the loans' maturity dates, suspending monthly payments of principal and interest until maturity, lowering interest rates, and waiving accrued interest and late fees

if the principal was timely paid.  Additionally, Osborne (1) agreed that five other loans could cross-default with the loans at issue; (2) provided additional collateral to protect U.S. Bank in the event of default; and (3) agreed that the deferred lower interest would be due at maturity at the lower interest rate unless the principal was repaid.  Osborne reiterated U.S. Bank's right to make protective advances.  According to Osborne, Maurer was informed about the modifications and did not object to them.  Maurer disputes this point.[2]

In January 2010, U.S. Bank agreed to another one-year extension.  As of January 1, 2011, Osborne had failed to repay under the forbearance agreements and related extensions.  U.S. Bank declared a default, based on the failure to repay the construction loans, not on any other default.  U.S. Bank began nonjudicial foreclosure proceedings in March 2011.  Maurer's legal counsel wrote U.S. Bank objecting to the foreclosure proceedings.  Maurer contends the value of the property is less than the amount owed to U.S. Bank and a foreclosure by U.S. Bank will wipe out Maurer's interest.

The parties filed their separate complaints in August 2011.  Maurer alleges the modifications of the construction loans increased the risk of Osborne's default, causing U.S. Bank to lose its senior position.  U.S. Bank asserts its priority interest is unaffected by the modifications.

---

[2] The supporting supplemental declaration of Robert Maurer does not appear in the record.

*F. Preliminary Injunction*

On September 20, 2011, Maurer filed a motion for a preliminary injunction. Maurer claimed the cross-default provisions of the forbearance agreements made Osborne's "likelihood of default more probable." In particular, Maurer complained that Osborne's various obligations to PFF were cross-defaulted with one another and that the obligations of borrowers other than Osborne were also cross-defaulted with the loans secured by the PFF trust deeds. Maurer next asserted that it was harmed by adding collateral to secure the bank's under-secured debt and that Maurer suffered impairment from deferring interest payments to the end of the extended maturity and by an increase in the principal balances of the indebtedness.

In its opposition, U.S. Bank argued none of the modifications increased the risk of Osborne's default because the risks were consented to in the original PFF deeds. U.S. Bank also argued that full loss of priority is a limited remedy which is unjustified in this case.

On October 13, 2011, the court filed its one-sentence written ruling: "Upon review of the [subordination] agreement, and the timeline of events (based on Plaintiff's argument that U.S. Bank took actions that adversely affected Plaintiff's position and value of security), the Court finds a basis for the preliminary injunction request."

III

DISCUSSION

The parties ask this court to decide whether the forbearance agreements and modifications between PFF and Osborne materially increased the risk of default by

7

Osborne and whether the trial court abused its discretion by issuing a preliminary injunction against foreclosure. (*Gluskin v. Atlantic Savings & Loan Assn.* (1973) 32 Cal.App.3d 307 (*Gluskin*).) If the loan modifications increased the risk of default, an alternative question is whether the trial court abused its discretion by enjoining foreclosure instead of limiting its injunction to foreclosure based upon the modifications. (*Lennar Northeast Partners v. Buice* (1996) 49 Cal.App.4th 1576.)

*Gluskin* held that modifications of senior liens can result in priority loss if they materially affect the junior's rights and materially increase the risk of default. (*Gluskin, supra,* 32 Cal.App.3d at p. 314.) U.S. Bank asserts a loan modification cannot present an increased risk of default when it is based on conditions that existed before modification. U.S. Bank contends that, under the subordination agreements, Maurer consented and agreed to the terms in PFF's loans, allowing the lender to declare cross-defaults, to make protective advances and add them to the indebtedness, and to earn interest. Having agreed in advance to these rights, Maurer cannot now claim it was impaired by modifications asserting these rights. In opposition, Maurer strenuously objects to U.S. Bank's characterization of the risks posed by the modifications.

*A. Standards of Review*

In reviewing the trial court's ruling granting a motion for preliminary injunction for abuse of discretion, we consider the likelihood of success by the party seeking the injunction and balance the relative interim harm to the parties. (*Butt v. State of California* (1992) 4 Cal.4th 668, 677-678; *People ex rel. Gallon v. Acuna* (1997) 14 Cal.4th 1090, 1109; *Teachers Ins. & Annuity Assn. v. Furlotti* (1999) 70 Cal.App.4th

1487, 1493.) Factual determinations supported by substantial evidence are resolved in favor of the trial court's ruling but an abuse of discretion occurs when, as a matter of law, the trial court's ruling contravenes the uncontradicted evidence. (*Smith v. Adventist Health System/West* (2010) 182 Cal.App.4th 729, 739; *Pro-Family Advocates v. Gomez* (1996) 46 Cal.App.4th 1674, 1680; *People v. Mobile Magic Sales, Inc.* (1979) 96 Cal.App.3d 1, 8.)

In considering the issue of likelihood of success by Maurer, we must analyze the impact of the modifications of the construction loans on the subordination agreements. Whether a modification has a material adverse effect on a junior lienor is usually a question of fact. (*Gluskin, supra,* 32 Cal.App.3d at p. 315.) When reasonable minds cannot differ, the conclusion that the modification resulted in a material adverse effect can be decided as a matter of law. (*Lennar Northeast Partners v. Buice, supra,* 49 Cal.App.4th at pp. 1586-1588.)

There is no contradictory evidence about the objective facts that the various parties executed the subject construction loans and the subordination agreements in 2006 and the forbearance agreements in 2009. It is not disputed that Osborne's default was not caused by the 2009 modifications but, rather, by the economic conditions afflicting the United States between the end of 2008 and the present time. The parties disagree, however, about whether the 2009 modifications of the construction loans increased the risk of default by Osborne. In other words, Maurer contends that a hypothetical risk caused by the 2009 loan modifications caused U.S. Bank to lose its priority position. The only evidence offered by Maurer was a declaration in which Robert Maurer stated: "I believe

9

such modifications materially increased the risk that [Osborne] would default on its obligations under the PFF Trust Deeds and jeopardized the security represented by the La Paz and the Plan Trust Deeds."  In the absence of any other evidence in the record of a material risk caused by modification, we conduct an independent legal review of the issue.

## B.  Modifications of the Construction Loans

If modifications in the senior lien have a material adverse effect on the junior lien either by increasing the risk of default or making protection of the junior lienor's position potentially more burdensome, then the senior lien may lose priority to the junior lien. (*Lennar Northeast Partners v. Buice, supra,* 49 Cal.App.4th at pp. 1586-1587; *Gluskin, supra*, 32 Cal.App.3d at p. 315.)  Where a seller's lien is subordinated to a construction loan, the law generally protects the subordinating seller and a breach of the terms of the subordination, including a modification of terms of the senior loan that materially increases the risk of default and makes it more expensive or urgent for the junior lien to protect its position, can result in a complete loss of priority by the senior lien.  (*Gluskin,* at pp. 316-318.)  The construction lender has a particular duty not to "make a material modification in the loan to which the seller has subordinated, without the knowledge and consent of the seller to that modification, if the modification materially affects the seller's rights."  (*Id.* at p. 314.)  However, under some circumstances a material modification of a senior lien may not result in loss of priority absent a "special relationship" or contractual subordination.  (*Friery v. Sutter Buttes Sav. Bank* (1998) 61 Cal.App.4th 869, 877-879.)

The kind of modifications deemed material are like those discussed in *Gluskin* and *Lennar*. In *Gluskin*, the modifications were "substantial and drastic." (*Gluskin, supra,* 32 Cal.App.3d at p. 312.) The bank in *Gluskin* changed the basic financial structure of the original agreement, causing a default because it accelerated maturity from 30 years to 10 months, doubled the interest rate, and halted the flow of construction funds. As *Lennar* recognized: "The effect of these modifications . . . was to allow the construction lender 'to escape its obligation to disburse construction funds. . . .' The very short term with a large balloon payment clearly enhanced the likelihood of default. . . . [And] the default occurred before construction had enhanced the value of the property, . . ." (*Lennar Northeast Partners v. Buice, supra,* 49 Cal.App.4th at p. 1589.) In *Lennar*, the lender and borrower increased the interest rate and principal beyond the originally approved levels. (*Id.* at pp. 1583-1584.)

By contrast in this case, U.S. Bank here funded the entire loan promised; the modifications extended maturity by two and a half years and decreased the interest rate by half. As we discuss below, the five modifications identified by Maurer do not qualify as increasing Osborne's risk of default.

*1. Modification to Allow Default Based on Five Other Deeds of Trust*

According to Maurer, the first material modification which increased the risk of Osborne's default under the PFF construction loans was the addition of five "Other Deeds of Trust" as an amendment to the original provisions for cross-default and cross-collateralization. The five other trust deeds were held by four trustors who are affiliated

11

with Osborne.[3]  The risk of the "Other Deeds of Trust" modification, as described by Maurer, was that "if the obligations . . . under any of the five foregoing deeds of trust went into default, the Bank was entitled to declare a default under the PFF Loans and foreclose on the Hemet property even if [Osborne] was faithfully performing all of its obligations under the notes secured by the PFF Trust  Deeds.  The conclusion that such an expansion of the circumstances under which the Bank was entitled to foreclose is a material modification of the PFF Trust Deeds is not subject to serious dispute."

We disagree with Maurer's position for two reasons.  First, Osborne was not faithfully performing its obligations and there is no evidence whatsoever that the "Other Deeds of Trust" modification had any bearing on the risk of Osborne defaulting on the construction loans from PFF.  Osborne's default was not related to the five other deeds of trust.

Secondly, as U.S. Bank explains, it is Osborne–not the four affiliated trustors–who is the obligor on the five other deeds of trust.  Contrary to Maurer's assertion, the PFF trust deeds were not amended to permit U.S. Bank to foreclose if the four affiliated trustors defaulted on their obligations to U.S. Bank.  Instead, the PFF trust deeds in their original form permitted U.S. Bank to foreclose if Osborne defaulted on its other obligations to PFF.  If Osborne, not the four trustors, had defaulted under the other deeds of trust, then U.S. Bank could reasonably have declared a default by Osborne on the

---

[3]  The Robert E. Osborne and Patricia A. Osborne Trust 2/3/04; REO Investments, LLC; Osborne Development-Calimesa Ranch LP; and Robert E. Osborne and Patricia A. Osborne.

construction loans. The modification did not increase the risk of Osborne's default on the construction loans held by U.S. Bank.

*2. Modification to Allow Default If Osborne Defaulted on Its Obligations to Third Party Creditors*

Maurer next contends the risk of Osborne's default was increased because of a change in the treatment of defaults involving third parties. Maurer contends that, although Osborne's default to third parties had to be material under the original construction loans, the modification agreements permitted any default to third parties, even one that was not material, to be treated as a default under the construction loans. As framed by Maurer, "[f]ollowing modification . . . [Osborne] was in default on the PFF Loans immediately upon [Osborne's] default on a third-party obligation, irrespective of whether there was any effect whatsoever on the Bank's position. The . . . Modification Agreements undeniably effected a material change to the PFF Trust Deeds."

Again, we note the subject modification had no bearing on the actual reason Osborne defaulted on the construction loans. U.S. Bank also argues this is a new argument that was not made in the lower court. Nevertheless, in the interests of judicial efficiency, we will address this and Osborne's other "new" arguments to the extent they are based on legal issues that may be fairly said to have been encompassed by the arguments below.

On the merits, we conclude the subject modification for third-party defaults caused no increase in the risk of Osborne's default to U.S. Bank. Under California law, a lender's right to declare a default is always subject to a requirement of materiality.

13

(*Tucker v. Lassen Savings and Loan Assn.* (1974) 12 Cal.3d 629, 639; *Superior Motels, Inc. v. Rinn Motor Hotels, Inc.* (1987) 195 Cal.App.3d 1032, 1051-1052.) Nothing about the modification allowed Osborne's nonmaterial default to third parties to be treated as a material default under the construction loans. If Osborne had defaulted under the forbearance agreement, U.S. Bank could still have exercised its rights under the original PFF trust deeds. The subject modification, however, did not increase the risk of Osborne's default.

*3. Modification of Notice of Default*

In another new argument, Maurer contends the forbearance agreements eliminated the grace period and notice of default requirements–especially for lines of credit–to which Osborne was entitled under the original PFF trust deeds, thus increasing the risk of Osborne's default to U.S. Bank. We disregard this argument as it pertains to lines of credit because it was not raised below. Nor was U.S. Bank's failure to give notice about default in lines of credit the reason for Osborne's default.

Furthermore, this argument is unsupported by the record because the forbearance agreements require the same notice as required under the PFF trust deeds and the deeds require notice be given allowing 15 days or more to cure a default. Maurer does not assert there was any lack of notice. The subject modification cannot be said to have increased the risk of Osborne's default to U.S. Bank.

*4. Modification Regarding Protective Advances*

At the time of modification in March 2009, U.S. Bank had made protective advances of about $522,000, which were added to the principal balance. Maurer argues

14

there is no evidence that this was a permissible advance under the original PFF trust deeds, again an argument not made below, limiting our review to the legal issue.

The right to make such advances is included in the PFF trust deeds and is recognized by California law.  (*Manning v. Queen* (1968) 263 Cal.App.2d 672, 674.) Maurer agreed to protective advances in the subordination agreements.  The protective advances were not related to the foreclosure and did not materially increase the risk of Osborne's default beyond the risk already anticipated in the PFF trust deeds and the subordination agreements.

*5. Modification Regarding Interest*

Finally, Maurer claims that U.S. Bank and Osborne increased the risk of Osborne's default by suspending Osborne's obligation to pay any interest until the extended maturity date and by lowering the interest rate from a floor of 8 percent to about 4 percent.  The obligation to pay monthly interest was also waived if the principal was paid on time.

A senior lender is not liable for modifying its loan unless the modification increased the risk of default and impaired the value of the junior lien.  An extension of time to repay a debt does not increase the risk of default, even though interest accrues in the meantime.  Such a modification does not adversely affect the junior lienholders rights or the value of their security.  (*Swiss Property Management Co. v. Southern Cal. IBEW-NECA Pension Plan* (1997) 60 Cal.App.4th 839, 843.)  The courts do not want to punish lenders for trying to help a borrower escape default.  Accordingly, the deferral of interest

payments until maturity cannot be considered to cause an increased material risk of default.

## IV

## DISPOSITION

The uncontroverted evidence shows that the five modifications of the construction loans did not materially increase the risk of Osborne's default.  Because Maurer did not establish a likelihood of success in the underlying action, the issuance of the preliminary injunction was an abuse of discretion.  In light of our conclusion there were no material modifications, we do not need to engage in balancing of interim harm or address the issue of an alternative remedy.

We reverse the order granting the motion for preliminary injunction and remand to the trial court with directions to enter an order denying the motion.  In the interests of justice, we order the parties to bear their own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

McKINSTER
Acting P. J.

KING
J.

16