# Illinois Official Reports

## Appellate Court

***Bowling Green Sports Center, Inc. v. G.A.G. LLC*, 2017 IL App (2d) 160656**

| | |
|---|---|
| Appellate Court Caption | BOWLING GREEN SPORTS CENTER, INC., Plaintiff-Appellant, v. G.A.G. LLC, JAMES P. GOCHIS, and PETER GOCHIS, Defendants-Appellees (Gold Coast Bank, Intervenor-Appellee). |
| District & No. | Second District<br>Docket No. 2-16-0656 |
| Filed | April 27, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 15-L-302; the Hon. Patrick J. O'Shea, Judge, presiding. |
| Judgment | Affirmed as modified. |
| Counsel on Appeal | Timothy M. McLean and Emily L. Langhenry, of Clingen Callow & McLean, LLC, of Lisle, for appellant.<br><br>Alan B. Bers, of Law Office of Alan B. Bers, of Chicago, for appellees.<br><br>Lance G. Johnson and Joseph Ramos, of Gold Coast Bank In-House Legal Department, of Chicago, for intervenor-appellee. |

| Panel | JUSTICE SCHOSTOK delivered the judgment of the court, with opinion. |
|---|---|
| | Justices Jorgensen and Spence concurred in the judgment and opinion. |

## OPINION

¶ 1     The instant controversy is a dispute between a senior lender and a junior lender. The senior lender, Gold Coast Bank, loaned over $3.4 million to the defendants, G.A.G. LLC (G.A.G.), James P. Gochis, and Peter Gochis. The junior lender, Bowling Green Sports Center Inc. (Bowling Green), loaned $405,000 to the defendants. Gold Coast Bank and Bowling Green executed an intercreditor agreement that provided that Bowling Green would not sue to recover any money from the defendants until the defendants had repaid Gold Coast Bank in full. The intercreditor agreement also provided that Gold Coast Bank agreed not to increase its loan to the defendants without first receiving Bowling Green's consent. Despite that provision, Gold Coast Bank subsequently increased its loan to the defendants by $51,000, without Bowling Green's knowledge or consent. After the defendants failed to timely repay Bowling Green, Bowling Green filed a breach of contract claim against the defendants. Gold Coast Bank intervened in the proceedings and sought to have Bowling Green's complaint dismissed on the basis of the intercreditor agreement. The circuit court of Du Page County found that, although Gold Coast Bank had breached the intercreditor agreement, the agreement still required that Bowling Green's complaint be dismissed. Bowling Green appeals from that order. For the reasons that follow, we affirm as modified.

¶ 2                           BACKGROUND

¶ 3     In 2008, the defendants entered into an agreement with Bowling Green to purchase a bowling alley in West Chicago. The defendants borrowed money from Gold Coast Bank and Bowling Green to finance the purchase of the property. On January 14, 2008, Gold Coast Bank and Bowling Green executed the intercreditor agreement. The agreement identified Gold Coast Bank as the senior lender and Bowling Green as the junior, or subordinated, lender. The agreement provided in pertinent part:

> "4. The Senior Lender agrees as follows:
>
>                         * * *
>
>     d. Senior Lender will not amend or otherwise modify the Notes or the Loan Agreement or otherwise permit the terms of the Notes or the Loan Agreement to be changed without the prior consent of [Bowling Green].
>
>                         * * *
>
>     11. Obligation Hereunder Not Affected: All rights and interest of the Senior Lender hereunder, and all agreements and obligations of the Subordinated Lender under this Agreement, shall remain in full force and effect irrespective of:
>
>                         * * *
>
>     b. Any change in the time, manner or place of payment of, or in any other term of, all or any of the Senior Indebtedness, or any other amendment or waiver of or any consent to departure from the Senior Loan Documents[.]"

¶ 4        On January 15, 2008, G.A.G. executed promissory notes in favor of Gold Coast Bank for a total of $3,412,750. That same day, G.A.G. executed a promissory note in favor of Bowling Green for $405,000. James Gochis and Peter Gochis personally guaranteed all of the loans.

¶ 5        On April 30, 2008, G.A.G. and Gold Coast Bank executed a modification agreement that increased Gold Coast Bank's loan to G.A.G. by $51,000. Bowling Green was not notified of this modification agreement, and it did not consent to it.

¶ 6        On March 27, 2015, Bowling Green filed a two-count complaint against the defendants, sounding in breach of contract. On August 12, 2015, Gold Coast Bank filed a petition to intervene. On October 6, 2015, the trial court granted Gold Coast Bank's petition to intervene.

¶ 7        On October 13, 2015, Gold Coast Bank filed a motion to dismiss Bowling Green's complaint, pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2014)). Gold Coast Bank asserted that Bowling Green's complaint was barred because, pursuant to the intercreditor agreement, Bowling Green had agreed not to sue to recover its debt until Gold Coast Bank's senior indebtedness had been paid in full. As Gold Coast Bank's loan had not been paid in full, Gold Coast Bank insisted that Bowling Green could not pursue its lawsuit. Gold Coast Bank further asserted that its alleged breach of the intercreditor agreement was immaterial because section 11(b) of the agreement explicitly stated that it was enforceable under all circumstances.

¶ 8        In support of its motion, Gold Coast Bank submitted the affidavit of one of its credit officers, John Gonzales. Gonzales stated that, as of August 11, 2015, the unpaid principal balance on the loan was $1,941,592.61.

¶ 9        On January 4, 2016, following a hearing, the trial court dismissed Bowling Green's complaint with prejudice. The trial court held that Bowling Green's lawsuit was premature until it could show that the defendants' obligations to Gold Coast Bank were paid in full. The trial court found that, although Gold Coast Bank's increasing its loan to the defendants without Bowling Green's consent constituted a "material breach" of section 4(d) of the intercreditor agreement, section 11(b) of the intercreditor agreement nonetheless prevented Bowling Green from pursuing its lawsuit.

¶ 10       On July 14, 2016, following a hearing, the trial court denied Bowling Green's motion to reconsider. Bowling Green thereafter filed a timely notice of appeal.

¶ 11                              ANALYSIS

¶ 12       On appeal, Bowling Green argues that the intercreditor agreement is not enforceable, due to Gold Coast Bank's breach of that agreement. As such, Bowling Green insists that Gold Coast Bank has forfeited the priority of its lien. Bowling Green thus asserts that it does not have to wait until the defendants repay Gold Coast Bank before it can seek repayment of its loan. In response, Gold Coast Bank argues that the trial court properly found that, due to the explicit language of section 11(b) of the intercreditor agreement, nothing it did could alter its status as senior lender as to the entire amount it loaned the defendants. We disagree with the arguments of both Bowling Green and Gold Coast Bank.

¶ 13       Although no Illinois court has yet addressed this issue, courts in other states have uniformly held that, while a senior lender and a mortgagor can agree to modify the terms of the underlying note or mortgage without first notifying or obtaining the consent of any junior lenders, if the modification is such that it prejudices the rights or impairs the security of any

junior lenders, their consent is required. See *Burney v. McLaughlin*, 63 S.W.3d 223, 229-34 (Mo. Ct. App. 2001); *Shultis v. Woodstock Land Development Associates*, 594 N.Y.S.2d 890, 892 (App. Div. 1993); *Shane v. Winter Hill Federal Savings & Loan Ass'n*, 492 N.E.2d 92, 95 (Mass. 1986). A senior lender's failure to obtain a junior lender's consent results in the modification being ineffective as to the junior lender and the senior lender relinquishing to the junior lender its priority with respect to the modified terms. *Burney*, 63 S.W.3d at 232. While this sanction ordinarily creates only the partial loss of priority, in situations where the senior lender's actions in modifying the note or mortgage have substantially impaired the junior lender's security interest or effectively destroyed its equity, a court will wholly divest the senior lender of its priority and elevate the junior lender to a position of superiority. *Id.*

¶ 14 We note that this authority is consistent with the Restatement (Third) of Prop.: Mortgages § 7.3 (1997). That section provides in pertinent part:

> "Replacement and Modification of Senior Mortgages: Effect on Intervening Interests.
>
> ***
>
> (b) If a senior mortgage or the obligation it secures is modified by the parties, the mortgage as modified retains priority as against junior interests in the real estate, except to the extent that the modification is materially prejudicial to the holders of such interests and is not within the scope of a reservation of right to modify as provided in Subsection (c)." Restatement (Third) of Prop.: Mortgages § 7.3(b) (1997).

¶ 15 The Restatement further provides that an increase in the principal amount is "materially prejudicial" because it obviously prejudices the holders of junior interests. Restatement (Third) of Prop.: Mortgages § 7.3 cmt. b (1997). Accordingly, where the modification entails an increase in the interest rate or the principal amount of the senior mortgage, the Restatement asserts that the junior lender should gain priority over the senior mortgage to the extent of the modification. See Restatement (Third) of Prop.: Mortgages § 7.3 cmt. c (1997).

¶ 16 Here, Gold Coast Bank originally loaned $3,412,750 to the defendants. Bowling Green was aware of the size of the loan and agreed to subordinate its loan to Gold Coast Bank's. Gold Coast Bank, however, subsequently increased its loan to the defendants by $51,000 without informing Bowling Green. As the increase of the loan was materially prejudicial to Bowling Green's security interest, the result is that Bowling Green will have a superior lien as to the additional $51,000 that Gold Coast Bank loaned to the defendants. See *Burney*, 63 S.W.3d at 233-34; Restatement (Third) of Prop.: Mortgages § 7.3(b) (1997).

¶ 17 In so ruling, we reject Bowling Green's argument that Gold Coast Bank's breach of section 4(d) of the intercreditor agreement should cause it to forfeit the entire priority of its lien. As the *Burney* court observed, only in "rare" cases will a court find that the senior lender has so substantially impaired the security interest of the junior lender that the priorities will be rearranged. *Burney*, 63 S.W.3d at 231. For example, in *Koloff v. Reston Corp.*, No. Civ. A. 12281, 1993 WL 106062 (Del. Ch. Mar. 26, 1993), the chancery court rearranged the priorities because the senior lender had increased its loan to the borrowers from $2.2 million to $20 million. In *Gluskin v. Atlantic Savings & Loan Ass'n*, 108 Cal. Rptr. 318, 321-25 (App. 1973), the reviewing court held that the senior lender had substantially impaired the security interest of the junior lender when it modified the $1.14 million note by reducing the face amount to $712,530; raising the interest rate from 6¼% to 10%; and shortening the maturity of the note from 30 years to 10 months, with a balloon payment at the end.

¶ 18 Here, Gold Coast Bank increased its loan by less than 1.5%. This amount ($51,000) was not materially significant in the defendants' inability to repay Bowling Green, because the defendants still owed Gold Coast Bank over $1.9 million when Bowling Green filed its complaint. Unlike in *Koloff* and *Gluskin*, Gold Coast Bank's modification of its loan did not substantially impair Bowling Green's security interest and rights as a junior lienholder. As the minimal impairment to Bowling Green's rights can be remedied by denying priority to the $51,000 that Gold Coast Bank loaned to the defendants in the modification agreement, we do not believe that it would be equitable to subordinate Gold Coast Bank's entire lien to Bowling Green's. See *Burney*, 63 S.W.3d at 234. Indeed, denying priority to only the $51,000 restores Bowling Green to the position it bargained for by agreeing to accept a second lien on the property as security for its loan. *Id.*

¶ 19 Turning to Gold Coast Bank's argument, we reject its contention that section 11(b) should be interpreted as meaning that it can modify any terms of its loan without Bowling Green's consent and still retain its senior status as to its entire loan, including the modified terms. Gold Coast Bank's argument is not tenable because it renders section 4(d) of the intercreditor agreement meaningless. See *Thompson v. Gordon*, 241 Ill. 2d 428, 442 (2011) (a court will not interpret a contract in a manner that would nullify or render provisions meaningless, or in a way that is contrary to the plain and obvious meaning of the language used). Further, as discussed above, both the Restatement and courts that have considered the issue have also rejected Gold Coast Bank's position.

¶ 20 We also reject Gold Coast Bank's assertion that Bowling Green has forfeited its right to challenge the applicability of section 11(b) of the intercreditor agreement by not raising that argument until its motion to reconsider. The record reveals that Bowling Green challenged the applicability of the intercreditor agreement when it contested Gold Coast Bank's petition to intervene. Accordingly, we find that Bowling Green sufficiently preserved its arguments for our review.

¶ 21 Finally, we note that the trial court found that Bowling Green's complaint was premature until the entire amount of Gold Coast Bank's loan was satisfied. We modify the trial court's judgment to reflect that Bowling Green's complaint is premature until the outstanding principal on Gold Coast Bank's loan to the defendants is reduced to $51,000. At that point, Gold Coast Bank shall not be permitted to collect the remaining amount due on its loan until Bowling Green's loan to the defendants is paid in full. In other words, with respect to the $51,000 that Gold Coast Bank loaned the defendants in violation of the intercreditor agreement, Gold Coast Bank's lien is junior to Bowling Green's because Gold Coast Bank's actions warrant a rearrangement of the priorities. See *Burney*, 63 S.W.3d at 234.

¶ 22                                                    CONCLUSION

¶ 23 For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed but modified to reflect that Bowling Green's complaint against the defendants is premature until the outstanding principal on Gold Coast Bank's loan to the defendants is reduced to $51,000.

¶ 24 Affirmed as modified.